ADOPTION OF CHRISTINE
(and a companion case[1]).

Middlesex. March 8, 1989. — August 21, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Adoption*, Dispensing with parent's consent. *Minor*, Care and protection. *Parent and Child*, Adoption, Care and protection of minor. *Evidence*, Communication between patient and psychotherapist, Privileged communication. *Practice, Civil*, Assistance of counsel.

On appeal from judgments of the trial court awarding permanent custody of a child to the Department of Social Services and allowing the petition of the department to dispense with the need for consent to adoption, in which proceedings the child's mother contended that her counsel's failure to assert her patient-psychotherapist privilege under G. L. c. 233, § 20B, constituted ineffective assistance of counsel, the record contained overwhelming evidence, apart from the allegedly privileged information, to support the trial judge's conclusion that the mother was currently unfit to further the welfare and best interests of her child. [606-609]

PETITION filed in the Cambridge Division of the District Court Department on June 11, 1984.

PETITION filed in the Middlesex Division of the Probate and Family Court Department on June 4, 1986.

The cases were consolidated for trial and were heard by *Haskell C. Freedman*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Vida K. Berkowitz* for the mother.

*Jon Laramore*, Assistant Attorney General, for Department of Social Services.

*Joan Rines Needleman* for the minor.

---

[1] Care and Protection of Christine.

LIACOS, C.J. In these consolidated cases,[2] the mother's principal argument on appeal is that the ineffectiveness of her trial counsel requires us to reverse the judgment of the trial judge awarding permanent custody of the child to the Department of Social Services (department), G. L. c. 119, §§ 23-27 (1988 ed.), and allowing the petition of the department to dispense with the need for consent to adoption. G. L. c. 210, § 3 (1988 ed.). For the reasons stated below, we affirm the judgment.[3]

We summarize the trial judge's findings.

The mother, born in the Cape Verde Islands, settled in the Boston area with her family in 1978. She speaks Creole, a Cape Verdian dialect of Portuguese, and she understands the Portuguese language. She neither speaks nor understands English.[4]

Between 1979 and 1984, the mother had four psychiatric hospitalizations of varying lengths, each precipitated by bizarre and sometimes violent behavior. In 1979, the mother was treated at Westborough State Hospital for paranoid psychosis, developmental difficulties with bizarre behavior, hallucinations, withdrawal, and difficulty in distinguishing between reality and what was going on in her mind. She is diagnosed as suffering from schizophrenia. She is severely disturbed and has great difficulty in taking care of herself as a responsible adult. In May, 1984, the mother was admitted to the psychiatric unit of Cambridge City Hospital, where it was discovered that she was eight months pregnant. She denied being pregnant

---

[2] A judge of the Probate and Family Court Department was authorized to sit simultaneously in the District Court and the Probate Court by the Chief Administrative Justice of the Trial Court acting under the authority of G. L. c. 211B, § 9 (1988 ed.). See *Care & Protection of Valerie*, 403 Mass. 317, 318 (1988).

[3] The department argues that we should affirm the trial judge's dismissal of the mother's appeal because the procedural mistakes that led to the dismissal prejudicially delayed the resolution of this case and because, according to the department, the appeal is without merit. In a case so vital to the interests of parent and child, we choose to exercise our discretion pursuant to G. L. c. 211, § 3 (1988 ed.), to reach the merits of this case. See *Custody of Two Minors*, 396 Mass. 610, 611 (1986).

[4] All proceedings relative to this case were assisted by a Cape Verdian, Creole-speaking interpreter.

throughout her term and had received no prenatal care. She gave birth to a daughter on June 10, 1984.

The day after the child's birth, an employee of Cambridge City Hospital filed a care and protection petition in the Cambridge Division of the District Court Department pursuant to G. L. c. 119, § 24, due to the mother's serious psychiatric illness, diagnosed as chronic paranoid schizophrenia; the mother's history of violent outbursts against family members; and the mother's inability, due to her illness, to care for herself or the infant. The department received temporary custody of the child and was substituted as petitioner.

The department filed a petition to dispense with consent to adoption, pursuant to G. L. c. 210, § 3, in the Middlesex Probate and Family Court Department on June 4, 1986. When the mother was discharged from the hospital, the department placed the child in foster care. At the same time the mother began receiving Prolixin, a powerful antipsychotic medication, which she continues to take. Weekly therapy sessions were also recommended.

Visitation supervised by social workers from the department between the mother and child began in February of 1985. During the visits, the mother would have little or no interaction with the child. The mother would generally sit in a chair and watch the child or stare at the floor. Only after the social worker instructed her would the mother have any interaction with the child, consisting of changing the child's diapers, not necessarily when needed, feeding the child, or handling the child's toys. Such interactions were brief in duration; the mother would generally return to her chair until encouraged again by the social worker. The quality of these visitations has continued essentially unchanged from the time the visits commenced to the present.

Visitation was suspended during April and May of 1987 because the child refused to go to the visits. As the child has grown older, she has been more able to understand that she was being prepared for a visit with the mother, and would have tantrums. There is, the judge found, no mother-daughter relationship between the mother and the child. The mother is

incapable of providing even minimal parenting to the child. When asked to state what qualities a good mother should have, the mother testified "good qualities," and "I am well. I do not have anything." When asked what a mother should do for a child, the mother testified, "take care of the child," "take the child to hospital," and "for a walk." Asked if there were anything else, she stated, "[T]hat's it."

The mother has physically threatened her mother (the grandmother), on one occasion with a knife. The grandmother is afraid of her daughter.

During the seven day trial, the mother, despite admonitions from the judge, repeatedly engaged in disruptive and inappropriate behavior, which interrupted the proceedings. The behavior is consistent with the diagnosis of schizophrenia given in court by the psychiatrist who administers the Prolixin.

The department made efforts to reunite the mother with the child, but the mother did not or was unable to cooperate. She did not comply with two service plans provided by the department. In July, 1985, the child was transferred from her foster home to the care of the mother's sister. The child remained with her aunt for approximately one month. She was returned to her original foster home when the department discovered that the mother had taken the child from her sister's home without authorization. The child has remained in the present foster home, the home of the prospective adoptive parents, up to the present time. She is doing well and her special physical and developmental needs are being cared for.

The judge found that the child was at risk on the day she was born because of the mental illness of the mother. Because of the mother's mental condition and limited capacity, the judge found, she is unfit to care for the child, and she can barely take care of herself.

The mother[5] contends that her trial counsel's failure to assert her patient-psychotherapist privilege under G. L. c. 233, § 20B (1986 ed.), constituted ineffective assistance of counsel. The

---

[5] The child's putative father denied paternity and does not contest either petition.

judge admitted in evidence, among other things, certain records relating to the hospitalization of the mother for psychiatric treatment, reports of court appointed investigators, the report of the guardian ad litem of the child (and her testimony), and reports and testimony of social workers based in part on those records. Various lay witnesses testified as well as expert witnesses, including a psychiatrist who gave a diagnosis of the mother and described his interaction with her during the course of administering antipsychotic medication to her.

For purposes of decision, we make two assumptions: First, that the evidence to which the mother now objects was privileged under § 20B. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 22 Mass. App. Ct. 969 (1986). Second, that trial counsel's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer." *Care & Protection of Stephen*, 401 Mass. 144, 148-149 (1987), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). It remains true, however, that before reversal is warranted there must be a showing of prejudice. *Commonwealth* v. *Gregory*, 401 Mass. 437, 445 (1988). *Commonwealth* v. *Klein*, 400 Mass. 309, 315 (1987).

Although the judge did appear to rely in part on the psychiatric evidence in his findings, we conclude that the non-privileged evidence of the mother's unfitness to care for the child, which was detailed by the judge and which appears throughout the record, far outweighs the potential prejudice caused by admission of the allegedly privileged material.[6]

First, the judge noted incidents of the mother's violent and bizarre behavior, which was supported by evidence in the record not derived from the hospital reports or other arguably privileged material. For example, the grandmother testified

---

[6] Trial counsel objected generally to the admission of the hospital records, but asserted no objection based on G. L. c. 233, § 20B, and did not request a hearing under G. L. c. 233, § 20B (*e*). For the purposes of this decision, we need not specifically address exactly which items fall within the privilege. It is sufficient that the judge relied on a great deal of evidence which clearly was not privileged.

that the mother had threatened her with a knife shortly before
the child's birth. The grandmother testified that the mother
was unusually overprotective of her younger sister, forbidding
anybody but herself to touch or bathe her, and fighting with
her other sister if she tried to intervene.

Secondly, the judge emphasized in his findings the mother's
disruptive and inappropriate behavior throughout the course of
the trial. He stated: "At various times during the trial of seven
days [the mother] engaged in the following behavior while
witnesses were testifying[ ] on one or more occasions[,] and
repeated some actions despite several admonitions from the
Court, namely, made noises, left her seat and returned, tried
to engage in conversation with her mother while the latter was
on the stand, argued with her mother, covered her ears with
her hands, made facial grimaces, cried, bowed her head, and
orally interrupted witnesses."[7] Our review of the record reveals
ample support for the trial judge's description of the mother's
disruptive and inappropriate conduct.[8] We give due deference
to the judge's finding as to her conduct, made with the benefit
of first-hand observation.[9] See *Petition of the New England
Home for Little Wanderers to Dispense with Consent to Adop-
tion*, 367 Mass. 631, 645 (1975).

In addition, on the basis of testimony by lay witnesses, the
judge found that during visitation there was little or no interac-
tion between the mother and the child. The trial judge stated

[7] The fact that the judge noted that this behavior was consistent with a
psychiatrist's diagnosis does not lessen the weight of the independent obser-
vations of the judge.

[8] We note that, during the hearing on the department's motion to dismiss
the appeal, the judge commented: "In all the Chapter 210 cases I've heard,
this was the strongest one for eliminating Consent to Adoption. . . . The
record is replete, with her interrupting the trial, with her intimidating her
mother, all of it . . . . . I heard and observed your client on the witness
stand. I observed her tactics during the trial. I observed all of her gestures,
all of which I have set forth in the Findings of Fact."

[9] We note that, while this conduct alone would not support a finding of
unfitness, it is significant when viewed in the context of the mother's other
behavior. See *Petition of the Dep't of Social Servs. to Dispense with Consent
to Adoption*, 399 Mass. 279, 290 (1987).

that "[t]here is no mother-daughter relationship between [the child] and [the mother], as far as the child is concerned." The judge found that the child frequently would become extremely emotionally upset upon learning that she was about to embark on a visit with the mother. Visitation had to be suspended for a short period because the child refused to go to the visits. See *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 283 (1987).

The judge stated that the mother "is incapable of providing even minimal parenting to the child." He found that the mother, who was twenty-six years old on the date of the decision, has never lived independently. The judge also noted that the child has "special needs."[10] There was testimony that the child had a muscle disorder throughout her body and that she had trouble learning to speak. The judge found that the mother had refused prenatal care.[11]

The foster parents, who have seven children, including four adopted children and two children with special needs, are particularly well qualified to care for the child in this case, according to the judge. The judge found that "[t]he child is doing well in her present foster home, the home of the prospective adoptive parents."[12]

In sum, there was overwhelming evidence, apart from the allegedly privileged information, that supported the trial judge's conclusion that the mother "currently is unfit to further the welfare and the best interests of the child."[13] *Care &*

---

[10] See *Adoption of Abigail*, 23 Mass. App. Ct. 191, 193 (1986) ("special needs are relevant because they bear on whether *this* particular mother [i.e., the biological mother] can be a fit parent to *this* particular child").

[11] The mother had also refused to undergo a court ordered psychiatric evaluation. See *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 288 (1987).

[12] "[T]he lengthy separation of a mother and child and a corresponding growth in the ties between the child and a different custodian may in some circumstances indicate that the forced return of the child to the mother would be seriously detrimental to the child, with the result that the mother should be deemed not fit to care for the child." *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 289 (1987), quoting *Custody of a Minor*, 389 Mass. 755, 768 (1983).

[13] We reject the mother's contention that trial counsel was ineffective in his cross-examination of one psychiatrist's diagnosis of schizophrenia. Trial

*Protection of Stephen, supra* at 150. See *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 389 Mass. 793, 799 (1983).[14]

*Judgment affirmed.*

---

counsel cross-examined the psychiatrist at length regarding the basis for his conclusions.

[14] We disagree with the mother's contention that the department failed to exert sufficient efforts to hold the biological family and her child together. See *Adoption of Abigail,* 23 Mass. App. Ct. 191, 197 (1986). See G. L. c. 119, § 1. The judge found that the department arranged regular weekly visitation between the mother and child and placed the child with the mother's sister in an effort to have the child remain with a family member. Only after the mother removed the child from the custody of her sister without proper authorization was the child returned to a foster home, where she is doing well and where her special needs are being cared for. The department also provided counseling for the mother from the time of the child's birth to the time of the trial. See *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc. to Dispense with Consent to Adoption,* 392 Mass. 738, 743 (1984). The judge found that the department made reasonable efforts to reunite the mother and the child but that the mother was unable or unwilling to cooperate. The department acted reasonably in the circumstances. See *Adoption of Abigail, supra.*