## CARE AND PROTECTION OF JEREMY.

Suffolk. February 7, 1995. - March 7, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Minor*, Care and protection, Custody, Temporary custody. *Parent and Child*, Care and protection of minor, Custody of minor. *Jurisdiction*, Equitable.

A judge in a care and protection proceeding may not overrule a residential placement decision made by the Department of Social Services with respect to a child placed in the department's temporary custody pursuant to G. L. c. 119, § 24, unless the department's decision is arbitrary or capricious and amounts to an abuse of discretion. [618-623]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 11, 1994.

The case was heard by *O'Connor*, J.

*Carol Donovan*, Committee for Public Services, for the minor.

*Kevin D. Cooper* for the father.

*Alexander G. Gray, Jr.*, Assistant Attorney General, for Department of Social Services.

*Paulette R. Marie*, for the mother, was present but did not argue.

*John P. Courtney*, Special Assistant Attorney General, for the Juvenile Court Department of the Trial Court, amicus curiae, submitted a brief.

GREANEY, J. The question raised by this appeal from an order of a single justice of this court is whether a judge in the District Court, sitting in a juvenile session in a care and protection proceeding, has the authority to require the Department of Social Services (department), over its objection, to place a child who is in the department's temporary cus-

tody pursuant to G. L. c. 119, § 24 (1992 ed.), into a specific type of residential placement.

On September 29, 1993, the department filed a care and protection petition in the Salem District Court on behalf of Jeremy[1] and two of his siblings. Temporary custody of the children was granted to the department. Jeremy initially resided in the home of the father's former foster sister who subsequently moved from the Commonwealth to Florida. For this reason, around December 16, 1993, Jeremy was placed in a foster home. Between December, 1993, and March, 1994, he resided in a series of foster homes. He was removed from each of these homes due to aggressive and disruptive behavior.[2] On March 17, 1994, the department requested the judge's permission to place Jeremy in a long-term residential treatment program. The child's attorney objected to the proposed residential placement and requested a hearing on the matter.[3] He argued that Jeremy should be placed in the less restrictive setting of a specialized foster home. An evidentiary hearing commenced on April 11, 1994, and continued sporadically over the next four months. During this period, Jeremy resided in two short-term facilities.

On June 7, 1994, the judge entered an order requiring the department to place Jeremy in a specialized foster home pending completion of the hearing on placement.[4] The de-

---

[1]In accord with our customary practice, the child is referred to by a pseudonym.

[2]The child and the father moved that certain exhibits attached to the department's petition for relief under G. L. c. 211, § 3 (1992 ed.), be struck. Those exhibits provided factual background for the petition. The single justice denied the motion to strike, but observed "that nothing in the exhibits ha[d] influenced [his] decision on the G. L. c. 211, § 3, petition." We rely on those exhibits only for factual background.

[3]The father also objected to the department's placement plan for Jeremy. The arguments made before this court by Jeremy and his father are, in most respects, the same. We shall refer to the father's arguments.

[4]According to the department, the judge assigned to the department the burden of proving, by a preponderance of the evidence, that placement in a residential facility was in Jeremy's best interest. According to the father, the judge "offer[ed] to each side an opportunity to show why the placement option it sought was in the child's best interest." The evidentiary

partment attempted to comply with this order, without success. At the same time, it moved to stay the judge's order, to vacate the order, and for relief from the order. These motions were denied, although the judge allowed so much of the motion for relief as related to time limits. On August 11, 1994, the department brought a petition under G. L. c. 211, § 3 (1992 ed.), for relief from the order before the single justice. Concluding that the judge had improperly substituted her "view of what is in the best interest of the child for that of the [d]epartment," the single justice vacated the order.[5] The father and counsel for the child appealed. We affirm the order of the single justice.

In *Care and Protection of Isaac, ante* 602, 610 (1995), this court concluded that a judge sitting in a juvenile session may not overrule a residential placement decision made by the department with respect to a child placed in the department's permanent custody pursuant to G. L. c. 119, § 26 (1992 ed.), unless the judge finds that the department's decision is arbitrary or capricious and amounts to an abuse of discretion. We inquire here about the extent of a judge's authority to order a specific residential placement, over the department's objection, for a child who has been placed in the *temporary* custody of the department under G. L. c. 119, § 24, pending an adjudication of the merits on the underlying care and protection petition. Some of the arguments made by the parties to this case about the scope and applicability of various provisions of G. L. c. 119 are addressed in *Care & Protection of Isaac, supra.* We now consider whether provisions of that statute referring specifically to temporary care and protection orders mandate a different result. We conclude that they do not.

---

hearing on placement has yet to be completed. The judge has not entered written findings or rulings of law and the legal basis for the order is not specified in the record.

[5]Pending completion of the evidentiary hearing, the single justice authorized the department to make placement decisions regarding the child. According to the department, Jeremy has been moved to a long-term residential facility.

General Laws c. 119, §§ 24 and 25, set out the process by which a judge may transfer temporary custody from a child's parent to the department or another custodian, pending a full adjudication on the merits of a petition for care and protection. See *Care & Protection of Robert*, 408 Mass. 52, 57 (1990). Neither § 24 or § 25 expressly authorizes a judge to order a particular residential placement for a child over the department's objection.[6] The father contends, however, that by providing alternative custodial options to a judge (the department, a licensed child care agency, or another suitable individual), the Legislature signaled its intent to assign to the judge primary authority for placement decisions. We disagree.

Sections 24 and 25 offer dispositional alternatives to a judge. See *Care & Protection of Isaac, supra* at 609 (use of word "or" indicates dispositional alternatives). When the department is selected as a child's custodian from among those alternatives, "decisions related to normal incidents of custody, by the terms of [G. L. c. 119, §§ 21 and 32 (1992 ed.)], are committed to the discretion of the department." *Id.* at 609. Nothing in the language of § 24 or § 25 suggests that the definition of "custody" set out in § 21, which includes the power "to determine the child's place of abode,

---

[6]General Laws c. 119, § 24 (1992 ed.), provides, in pertinent part:

"If . . . the court is satisfied that there is reasonable cause to believe that the child is suffering from serious abuse or neglect, or is in immediate danger of serious abuse or neglect, and that immediate removal of the child is necessary to protect the child from serious abuse or neglect, the court may issue an emergency order transferring custody of a child under this section to the department or to a licensed child care agency or [other qualified] individual . . . ."

General Laws c. 119, § 25 (1992 ed.), provides:

"When [a] child [who is the subject of a care and protection petition] is taken into custody upon said precept and brought before said court, the court may then hear said petition, or said petition may be continued to a time fixed for hearing, and the court may allow the child to be placed in the care of some suitable person or licensed agency providing foster care for children or the child may be committed to the custody of the department, pending a hearing on said petition."

medical care and education," does not apply at this stage of
a care and protection proceeding.[7] Of equal importance,
§ 32 of G. L. c. 119 authorizes the department to decide
when placement in a residential treatment program is war-
ranted for a child "in the care or custody of the depart-
ment." Again, nothing in the language of § 32 suggests that
this authority is limited to those cases in which a child has
been committed to the custody of the department following
an adjudication on the merits of a care and protection
petition.[8]

It is suggested that the scope of a judge's authority under
§§ 24 and 25 to order a specific residential placement over
the department's objection should be resolved by reference to
§ 26 (2), which provides, in part, that if a judge finds that
the allegations in a care and protection petition have been
proved, the judge may commit a child to the custody of the
department, "or make any other appropriate order with ref-
erence to the care and custody of the child as may conduce
to [the child's] best interests, including . . . (2) . . . subject to

---

[7] In *Care & Protection of Isaac,* ante 602 (1995), and in this case, we
are concerned with the department's authority to determine the place of
abode of a child in its custody. The authority to control visits to a child
and to make decisions about medical care are also custodial powers under
§ 21. The termination of visitation between a child and his parents, and
the authorization for extraordinary forms of medical treatment, raise is-
sues not raised by the choice of a child's residence. See *Custody of a Mi-
nor (No. 2),* 392 Mass. 719, 725-726 (1984) (visitation). See also *D.L.* v.
*Commissioner of Social Servs.,* 412 Mass. 558 (1992) (mental health
treatment); *Custody of a Minor (No. 1),* 385 Mass. 697 (1985) (medical
treatment). A judge's authority in decisions related to the termination of
parental visitation or the need for extraordinary medical care generally
will be broader than it is with respect to the choice of a child's residence
for reasons not related to the structure and language of the governing
legislation.

[8] A temporary order under § 24 or § 25 may determine responsibility
for a child's custody for a lengthy period. See *Care & Protection of Rob-
ert,* 408 Mass. 52, 61 n.5 (1990) (acknowledging that temporary custody
order entered after seventy-two hour hearing may determine child's cus-
tody for one year or more). Residential placements for children in the tem-
porary custody of the department, therefore, may have a significant "im-
pact on the department's allocation of finite resources among a large
population of children in need." *Care & Protection of Isaac, supra* at 606.

such conditions and limitations as [the judge] may prescribe, transfer temporary legal custody to . . . the department of social services." In addition, the father argues that the last sentence of § 29, which refers to a judge's authority to "make such temporary orders as may be necessary to protect the child and society," authorizes a judge to order a particular residential placement which the court determines is in the child's best interests. Viewed in the context of the statute as a whole, see *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 538 (1992), neither of the provisions logically can be read to grant a judge authority to override a reasonable placement decision made by the department for a child in its temporary custody pursuant to §§ 24 and 25.

An order of temporary custody entered under § 26 (2) clearly is distinguishable from an order of temporary custody entered under § 24. A temporary custody order entered under § 24 reflects a judicial determination that immediate removal of a child from his home is necessary to protect the child from serious abuse or neglect. *Care & Protection of Robert, supra* at 57. Entry of an order at this stage represents "a temporary, but significant, stabilization of the factual situation at issue," *id.* at 68 n.7, pending an investigation of the child's circumstances sufficient to permit formulation of a long-term plan for his future.

In contrast, an order of temporary custody entered under § 26 (2) represents the choice of a relatively long-term dispositional alternative that takes into account the presumption that a child's interests generally are best served if the child is able to remain with his natural parents. See G. L. c. 119, § 1 (1992 ed.). If a judge concludes that a child's home is presently unsafe, but there exists a real prospect of improvement in the foreseeable future (depending, for example, on a parent's completion of a treatment program or acceptance of various services), a judge might enter an order under § 26 (2) transferring temporary (rather than permanent) custody of the child to the department. See Commentary to Standard 5:07 of the Standards of Judicial Practice of the District Court Department of the Trial Court: Care and Protection

Proceedings (rev. 1988). The conditions and limitations contained in the order might relate, for example, to parental responsibilities or other conditions intended to foster reunification of the family. Just as an order awarding "temporary custody" to the department under § 24 differs in function and purpose from an order entered under § 26 (2), by the terms of the statute, the scope of a judge's authority to impose conditions and limitations in the order also differs. See *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 283-285 (1991) (same word or term may have different meanings in different contexts).

Section 29, on which the father relies, mandates the appointment of counsel for the child and the parents and, in any case in which the department is a party, the preparation and distribution of a service or case plan for the child and family within forty-five days of the department's appearance. The last sentence of § 29 provides, in its entirety: "Notwithstanding the provisions of this section, the court may make such temporary orders as may be necessary to protect the child and society." This sentence simply preserves a judge's ability to protect a child by entering an order granting temporary custody to the department or another appropriate custodian even if there has been a failure to comply with the requirements of the section. The provision cannot logically be read to contain a broad grant of authority to a judge to impose conditions or limitations on the department's exercise of its custodial powers.

Finally, we reject the assertion that the grant of equitable jurisdiction under G. L. c. 218, § 59 (1992 ed.), in cases and matters arising under G. L. c. 119, offers an adequate basis for the order entered by the judge. A grant of equitable jurisdiction is a grant of broad power to act in the best interests of a person properly within the jurisdiction of the court. See *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 755-756 (1977). That power, however, does not extend to "decid[ing] questions committed by law to the determination of public officials." *Capuano, Inc.* v. *School Bldg. Comm. of Wilbraham*, 330 Mass. 494, 496 (1953). See

*Stretch* v. *Timilty*, 309 Mass. 267, 270-271 (1941). See also *Charrier* v. *Charrier*, 416 Mass. 105, 110 (1993); *Williams* v. *Secretary of the Executive Office of Human Servs.*, 414 Mass. 551, 570 (1993). We have concluded that G. L. c. 119 allots to the department the authority to determine the residence of a child committed to its custody on a temporary basis. "[W]here the means of carrying out [a] statutory duty is within the discretion of the public official, courts normally will not direct how the public official should exercise that statutory duty." *Attorney Gen.* v. *Sheriff of Suffolk County*, 394 Mass. 624, 630 (1985).

As the single justice noted, when a parent challenges the department's manner of carrying out its custodial responsibility, in a case involving an order of temporary custody, § 21 authorizes a judge to "review" the department's decision. "The word 'review' requires, in the context of judicial consideration of an administrative decision, a reexamination of an agency's actions, and not a de novo consideration of the merits of the parties' positions." *Care & Protection of Isaac, supra* at 610. Review, in these cases, is for legal error or abuse of discretion. *Id.* at 610. We agree with the single justice that G. L. c. 119 contains no source of authority for the order entered by the judge.

Having reached this conclusion, we recognize that the statutory scheme is, in some respects, unclear and leaves room for the parties in this case, and in *Care & Protection of Isaac, supra*, to make conflicting arguments about the proper role of a court in reviewing the department's placement decisions. The Legislature may wish to examine the statute to state more definitively the scope of a court's authority when passing on those decisions.

The order of the single justice is affirmed.

*So ordered.*