## CARE AND PROTECTION OF MANUEL.[1]

Essex. October 9, 1998. - December 18, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Minor,* Care and protection, Temporary custody. *Waiver. Parent and Child,* Care and protection of minor. *Adoption,* Care and protection.

A minor child who in 1996 waived his right to a temporary custody hearing under G. L. c. 119, § 24, did not thereby waive his right to a separate temporary custody hearing in different circumstances in 1997, where the Department of Social Services had never been awarded temporary custody following a full evidentiary hearing under that statute; nor did the child waive his hearing by incorrectly citing and arguing G. L. c. 119, § 25, as a basis for the hearing [531-532, 535-536]; the matter was remanded for a temporary custody hearing to be held forthwith [536].

This court stated that, in care and protection proceedings in which temporary legal custody of the child is to be awarded to the Department of Social Services pursuant to either G. L. c. 119, § 24, or § 25, the judge, absent a valid waiver, should hold a hearing, first, to determine whether custody should be removed from the child's parents or present legal custodian, and second, to consider any nomination by the child or his parents of a relative or other individual to become the temporary legal custodian for the child during the pendency of the care and protection matter. [532-535]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 11, 1998.

The case was heard by *Greaney,* J.

*Nikki A. Leventis* for the child.

*Virginia A. Peel* for Department of Social Services.

*Jessica Salzberg,* Committee for Public Counsel Services, for the father, amicus curiae, submitted a brief.

*Catherine Krebs,* for Roberta, amicus curiae, submitted a brief.

IRELAND, J. This is an appeal pursuant to G. L. c. 211, § 3, by

[1]The name is fictitious. Manuel's older half-sister, Roberta (a pseudonym), has been named along with Manuel on the care and protection petition, which is still pending in the District Court. Roberta has filed an amicus brief opposing Manuel's request for relief.

the minor child, Manuel, from denial of interlocutory relief by a. single justice of this court. Manuel asked the District Court judge who was presiding in this G. L. c. 119 care and protection matter to hold a hearing pursuant to G. L. c. 119, § 25, to consider the nomination by him of his paternal grandparents to be his legal custodians during the pendency of the c. 119 proceedings. The District Court judge denied Manuel's request, concluding that § 25 did not provide authority for him to conduct such a hearing once temporary legal custody of the child had been awarded to the Department of Social Services (department) pursuant to G. L. c. 119, § 24, and opportunity had been given for a hearing under that section.

The child next brought a petition under G. L. c. 211, § 3, seeking relief from the District Court judge's denial of his request. The single justice agreed with the lower court judge and denied relief. Manuel then sought relief from the full court pursuant to S.J.C. Rule 2:21, 421 Mass. 1303 (1995). We granted Manuel's motion for review by the full bench because appropriate interim relief was not available to him through the normal appellate process.[2] After oral argument, this court issued an order granting the relief requested and stating that an opinion would follow.[3] We now state that, whenever temporary legal custody of the child named in a care and protection petition is to be awarded to the department pursuant to either G. L. c. 119,

[2]Supreme Judicial Court Rule 2:21 (2), 421 Mass. 1303 (1995), provides in part: "[T]he appellant must set forth the reasons why review of the trial court decision cannot adequately be obtained on appeal from any final adverse judgment in the trial court or by other available means."

[3]The order read as follows: "At oral argument in this matter on October 9, 1998, the Department of Social Services conceded that all parties have a right to be heard when a child's custody is to be changed pursuant to § 24 of c. 119, which was the case here when the department removed the children from the custody of the maternal aunt in December, 1997. While there may have been some confusion below as to the label attached to the child's and the father's request for consideration of the paternal grandparents as custodians at that time and as to which section of c. 119 the request was based on, it should now be treated *nunc pro tunc* as a request for a custody hearing, rather than as a placement hearing, and, if possible, such a hearing should be held forthwith.

"Because an adjudicatory hearing on permanent custody is scheduled within the next several weeks and a custody hearing under § 24 may be difficult to schedule before the hearing on permanent custody commences, the court should in any event move as quickly as possible to resolve final custody pursuant to G. L. c. 119, § 26. Once that hearing begins the case should be heard from day to day to final conclusion. If, for any reason, the hearing on permanent custody does not go forward in November, then all parties should

§ 24, or § 25, the judge, absent a valid waiver, must hold a hearing, first, to determine whether custody should be removed from the child's parents or present legal custodian and, second, to consider any nomination by the child or his parents of a relative or other individual to become the temporary legal custodian for the child during the pendency of the care and protection matter.

I

On November 13, 1996, the department filed an emergency care and protection petition pursuant to G. L. c. 119, § 24, in the District Court on behalf of both Manuel and Roberta, Manuel's older half-sister by a different father. The two children were then living with their mother, who was alleged by the department to have physically and emotionally abused Roberta. No allegations of abuse or neglect were raised against Manuel's father who, at that point, was not living with Manuel's and Roberta's mother or providing day-to-day care for Manuel. The department was awarded legal custody of both children on an emergency basis. See G. L. c. 119, § 24.

After several postponements, the District Court judge scheduled the seventy-two hour hearing required by G. L. c. 119, § 24, for December 17, 1996. In the days prior to that hearing, the parties, including the department, the parents (who were not contesting custody), and the children, through their appointed counsel, had discussed two possibilities for temporary "placements" of the children with family relatives. The first was with a maternal great aunt, Mrs. V, who was willing to become the legal custodian for both children. The second was with Manuel's paternal grandparents, who also were willing to become legal custodians, but only for Manuel. The judge asked the department to conduct home studies on both sets of relatives. The department reported to the court that it would not recommend the grandparents because of an earlier criminal charge — continued without a finding — against the grandfather for domestic assault of the grandmother.

On December 17, 1996, the date scheduled for the seventy-two hour hearing, the parties, including the parents and both

be given a full opportunity to propose placement options and nominate custodians in a § 24 hearing which shall then be held forthwith.

"Opinion or opinions to follow."

children through their counsel, signed a stipulation waiving their rights to the § 24 hearing and agreeing that Mrs. V, the maternal great aunt, should be appointed by the court as the children's temporary legal custodian. The judge approved the parties' stipulation, and both children were then placed with Mrs. V as their legal custodian.

There matters stood until some eleven months later, when, on November 14, 1997, the department removed the children from Mrs. V's home amidst allegations that Mr. V had sexually molested Roberta. In an emergency hearing at which the department appeared ex parte, the department was again awarded emergency custody of both children, whom it placed together in a department foster home. The District Court judge then determined that Mrs. V, as the children's most recent legal custodian, had standing to contest custody at a § 24 seventy-two hour hearing, stemming from the children's removal from her care through an emergency order of the court. Accordingly, Mrs. V was provided notice of a hearing scheduled for December 10, 1997, and was appointed counsel. The parents, too, were provided notice of the hearing; the father on November 20, 1997, and the mother in open court on December 10, 1997 — a fact of no small significance.

Mrs. V waived her right to a hearing. On December 10, the date scheduled for the aunt's seventy-two hour hearing, Manuel's father moved for a separate hearing pursuant to G. L. c. 119, § 25, to have Manuel placed in his physical custody. On that date Manuel also moved for a hearing under § 25, once again asking the judge to consider his paternal grandparents to be his temporary legal custodians. The judge denied both motions, ruling that § 25 did not authorize him to hold a hearing because the parents and the child had already waived that right (as he implied they had through their December 17, 1996, stipulation).

The father has not pursued further the matter of the denial of his own motion to obtain custody of his son. Instead, he supports Manuel's motion for a hearing under § 25 to consider the grandparents as custodians and has filed an amicus brief in Manuel's appeal. Both children are presently in placement together in a department-approved foster home. The grandparents have visited Manuel on a regular basis, but the department has taken the consistent position that, owing to the earlier domestic abuse charge against the grandfather, it will not recom-

mend or approve them as Manuel's caretakers. Meanwhile, the matter is proceeding toward a hearing under G. L. c. 119, § 26, adjudicating the merits of the department's petition, with a hearing or trial scheduled to begin sometime later in 1998. The trial will include an additional count, recently added by the department under G. L. c. 210, § 3, asking the court to dispense with the parents' consent to the adoption of both children.

## II

The core of the parties' dispute is whether § 25 empowers the judge, upon request of the child or parent, to hold a temporary "custody," or "placement," hearing prior to the adjudication of the merits of a care and protection petition where the § 24 hearing has already been held or waived. The department contends that § 25 provides no authority for a hearing once a § 24 temporary custody hearing either has been held or has been validly waived (as it claims occurred here). The department insists that the child has no constitutional right to a § 25 hearing and that the child's sole recourse, at this point in the proceedings, is to seek judicial review of its "placement" decision (not to place the child in the grandparents' home) under § 21 for abuse of its discretionary custodial powers to select the child's placement or for other error of law. See G. L. c. 119, § 21 ("custody" includes determining "child's place of abode"; party who objects to custodian's determination of child's place of abode may apply to committing court for review). See also Care & Protection of Jeremy, 419 Mass. 616, 622-623 (1995) (department has broad discretion when making placement decisions for children who have been committed to its temporary custody under G. L. c. 119, § 24; exercise of such discretionary powers is reviewable only for abuse of discretion or error of law).

By contrast, Manuel (joined in the amicus brief by his father) contends that § 25 provides "a vehicle for interim relief," giving him the right at any time after the § 24 seventy-two hour hearing, but prior to a § 26 adjudication, to an additional hearing, or hearings, to consider his nomination of a particular temporary custodian. The child stresses that his interests in procedural and substantive due process — his interests both in being "heard" and in preserving his family and extended family ties — force this conclusion.

We agree with the department that § 25 does not provide the

sort of "vehicle for interim relief," subsequent to a hearing under § 24, that the child wishes.[4] But our inquiry does not stop there. Although captioned as such (and argued throughout this appeal as such), the child's motion is not, in substance, one for a hearing under § 25 but, rather, one for a seventy-two hour custody hearing under § 24 asking the court once again to consider awarding temporary custody of him to his paternal grandparents.

Manuel did not waive his right to a temporary custody hearing in 1997 simply because he cited the wrong statutory provision. See generally *Lambley* v. *Kameny*, 43 Mass. App. Ct. 277, 280 (1997) ("the label attached to a pleading or motion is far less important than its substance"). Nor did he waive that right when, one year prior to the December 10, 1997, scheduled hearing, through counsel he waived his right to be heard at the hearing scheduled for December 10, 1996, in circumstances that were radically different from those in December, 1997.[5] Manuel's stipulation waiving his right to a seventy-two hour hearing in 1996 was hardly a knowing or intelligent relinquishment of his separate right to a seventy-two hour hearing in 1997, when the circumstances had changed so dramatically and where the department had never been awarded temporary custody following a full evidentiary hearing under either § 24 or § 25.[6]

## III

A. The relevant provisions of § 24, pertaining to so-called seventy-two hour hearings, and § 25, pertaining to nonemergency preliminary hearings, provide alternative, mutually exclusive means of conducting a temporary custody hearing pending the final adjudicatory hearing that takes place under § 26.[7] See *Care & Protection of Jeremy*, *supra* at 619. If, as occurred here, custody of the child has been transferred to the department by an emergency order of the court, the child and

---

[4]Section 24 states that at the seventy-two hour hearing the court "shall determine whether such temporary custody should continue *until a hearing on the merits* of the petition for care and protection is concluded before said court" (emphasis added). G. L. c. 119, § 24.

[5]See Part III C, *infra*, for further discussion of this point.

[6]The ex parte emergency hearing took place on or about November 14, 1997, when the children were removed from Mrs. V's home. Emergency orders transferring legal custody of the children to the department were issued pursuant to G. L. c. 119, § 24.

[7]The relevant sentences of § 24 are as follows:

his parents or custodians are entitled to a temporary custody hearing under § 24 within seventy-two hours of issuance of that emergency order.[8] G. L. c. 119, § 24. See *Care & Protection of Robert*, 408 Mass. 52, 57 (1990) (noting that where custody is transferred to the department, a hearing must be held within seventy-two hours). If, on the other hand, there has been no emergency custody order or emergency removal of the child, then the temporary custody hearing would be held pursuant to § 25. See *Morin* v. *Commissioner of Pub. Welfare*, 16 Mass. App. Ct. 20, 26 n.6 (1983) ("[Section] 25 may have some vitality in nonemergency situations"); R.L. Ireland, Juvenile Law § 109 (1993) ("In non-emergency situations, an order granting temporary custody to the Department of Social Services could be based on section 25 of chapter 119").

In key respects, a temporary custody hearing held under § 25 is identical to one held under § 24. The parties, including the child named in the petition, have the right to be heard regarding, for example, their possible nominations of temporary custodians for the child and whether (or what) temporary custody orders should be issued — particularly where such orders often remain in effect for a year or more until final adjudication of the petition. See *Care & Protection of Robert*, *supra* at 61 n.5. Furthermore, both sections give the judge essentially the same range of options of awarding temporary care or custody of the child to the department, or to another licensed child care agency, or to an individual nominated by the child or parents and approved by the court as provided in § 26 (2) (i).

"Said transfer of custody [by an emergency order] shall be for a period not exceeding seventy-two hours, except that upon the entry of said order, notice shall be given to either or both parents, . . . or other custodian, to appear before said court. The court at this time shall determine whether such temporary custody should continue until a hearing on the merits [under § 26] . . . is concluded before said court."

Section 25 provides in part:

"[S]aid petition may be continued to a time fixed for hearing, and the court may allow the child to be placed in the care of some suitable person or licensed agency providing foster care for children or the child may be committed to the custody of the department, pending a hearing [under § 26] on said petition [adjudicating the merits]."

[8]We recognize that unfortunately this hearing frequently occurs later than the seventy-two hours prescribed in the statute, owing, for example, to scheduling difficulties in the court or to the parties' agreement to delay the hearing.

Compare § 24 with § 25. See *Care & Protection of Jeremy, supra* at 619. Because the interests affected by rulings under the two sections are the same, we believe that the same "fair preponderance of the evidence" standard that governs temporary custody orders under § 24, *Care & Protection of Robert, supra* at 68, should also govern orders under § 25.

B. We think it plain that Manuel requested a "custody" hearing, not a "placement" hearing.[9] He asked the judge to consider awarding custody of him to the paternal grandparents. He did *not* ask the court to extend its previously issued emergency order transferring legal custody of him to the department and for the department then to exercise its custodial prerogative of selecting his place of residence by placing him with the grandparents — something the department consistently had stated it would not do. Put simply, the child asked the court to consider a specific legal custodian for him other than the department. "Alternative custodial options" such as this fall squarely within the court's discretionary powers. *Care & Protection of Jeremy, supra* at 619 (judge may select child's legal custodian from the several alternatives provided under §§ 24, 25, and 26 [2]). See *Care & Protection of Isaac,* 419 Mass. 602, 609 (1995) (under § 26, judge may choose among dispositional alternatives, including transferring permanent custody of child to the department).[10]

Placement decisions, as opposed to custody decisions, fall within the discretionary powers of the legal custodian as one of the usual incidents of custody. See G. L. c. 119, § 23; *Care & Protection of Jeremy, supra* at 619; *Care & Protection of Isaac, supra* at 609. While the judge certainly may "offer guidance to the [custodian] concerning a child's residence," *Care & Protection of Isaac, supra* at 609, the ultimate decision regarding placement is the custodian's. That decision is reviewable under § 21 for abuse of discretion or error of law only. See *id.* at 611-613; *Care & Protection of Jeremy, supra* at 623. Hence, Man-

[9]The motion read that the child "hereby moves [the court] to allow a M.G.L. c. 119, § 25, hearing in order that the paternal grandparents may be considered as *custodian* for [the child]" (emphasis supplied).

[10]Sections 24, 25, and 26 all confer on the judge the same general discretionary powers consistent with the child's best interest to award custody or care of the child to the department, to another licensed child care agency, or to "any individual who, after study by a probation officer or other person or agency designated by the court, is found by the court to be qualified to give care to the child." G. L. c. 119, § 26 (2) (i).

uel's proper recourse here was to request a custody hearing under § 24, not an abuse of discretion "placement" hearing under § 21, where what he was seeking was a specific custody order.

Manuel had the right to the requested § 24 seventy-two hour custody hearing regarding, in general, what temporary custody orders should be issued on his behalf and, in particular, whether the grandparents should be awarded temporary legal custody of him.[11] Like his parents who were given notice of the hearing, Manuel had vital interests at stake. *Adoption of Christine*, 405 Mass. 602, 603 n.3 (1989) (stating that determinations of custody are "vital to the interests of parent and child"). It would be a hollow gesture, indeed, for the court to afford notice to the parents of the § 24 hearing,[12] as was done, but then to deny them and Manuel the opportunity to be heard at that hearing. We have held that protection of the parties' due process rights is of great importance at a seventy-two hour hearing. See *Care & Protection of Robert, supra.* It is axiomatic that notice and the opportunity to be heard are the most basic requirements of due process. See *Goldberg* v. *Kelly*, 397 U.S. 254, 267 (1970), and cases cited. See also *Daniels* v. *Board of Registration in Medicine*, 418 Mass. 380, 383 (1994), quoting *Matter of Tobin*, 417 Mass. 92, 101 (1994) ("The hallmarks of due process are notice and 'an opportunity to be heard at a meaningful time and in a meaningful manner' "). Absent a valid or effective waiver, therefore, the District Court judge should have conducted the § 24 hearing and taken up Manuel's nomination of his grandparents to be his temporary custodians.

C. Through counsel, Manuel knowingly waived his right to be heard at the first seventy-two hour hearing in 1996. He does not contend otherwise. At that juncture, the parties had agreed by stipulation that custody of him and his sister should be awarded to the maternal great aunt. In November, 1997, however, when that custody arrangement was terminated by an emergency order of the court, Manuel had the right to be heard anew as to who should now become his legal custodian. The circumstances in December, 1997, were obviously much different than they were when the stipulation was signed in 1996, and

---

[11]This is one of the custodial alternatives provided under § 24.

[12]Section 24, sixth sentence, requires notice of the seventy-two hour hearing "to either or both parents, guardian with care and custody, or other custodian."

those new circumstances could hardly have been foreseen. We have previously held that the "intent to give up a known right is necessary for waiver. . . ." *Cities Serv. Oil Co.* v. *Board of Appeals of Bedford*, 338 Mass. 719, 725 (1959), and cases cited. Even in the case of a waiver of nonconstitutional, civil procedural rights, some present act or omission, or a prior agreement to waive, is required. See *Spence* v. *Reeder*, 382 Mass. 398, 413 (1981). It would be inconsistent with these principles to say that a waiver made in 1996, induced by the then-existing circumstances, would be effective in 1997 to bar a new hearing precipitated by a change in those very circumstances. We conclude, therefore, that Manuel's waiver of his right to be heard at the first seventy-two hour hearing did not foreclose his right to be heard at the second seventy-two hour hearing.

Whenever a child's legal custodian is to be changed pursuant to G. L. c. 119, § 24, as occurred here, the parties, including the child, have the right to be heard and to have the judge consider their nominations of possible legal custodians for the child. As we instructed in our order issued October 15, 1998, the matter has been remanded to the District Court where a § 24 temporary custody hearing was to be held forthwith. The matter should then proceed expeditiously toward final adjudication.