## CARE AND PROTECTION OF ORAZIO
(and one companion case[1]).

No. 06-P-601.

Essex. September 21, 2006. - February 13, 2007.

Present: LENK, BERRY, & KATZMANN, JJ.

*Minor,* Care and protection, Temporary custody. *Parent and Child,* Care and protection of minor, Custody of minor. *Due Process of Law,* Care and protection of minor, Standard of proof, Notice. *Adoption,* Care and protection. *Evidence,* Presumptions and burden of proof, Child custody proceeding.

The judge in a care and protection case erred in transforming a seventy-two hour temporary custody hearing following the removal of two of the mother's children into a trial on the merits; further, because such action did not comport with principles of due process, in that the transformation deprived the mother and children of actual notice and a meaningful opportunity to participate in the litigation, this court vacated the judgment committing the children to the permanent custody of the Department of Social Services and remanded for further proceedings. [217-221]

PETITION filed in the Essex County Division of the Juvenile Court Department on March 17, 2004.

The cases were heard by *Jose Sanchez, J.*

*Cheryl Garrity* for the mother.

*Helen A. Brown Bryant* for Orazio.

*Beth M. Nussbaum* for Francine.

*Maryanne Reynolds Martin,* Assistant Attorney General, for Department of Social Services.

KATZMANN, J. Without notice and over objection, and after bypassing a seventy-two hour temporary custody hearing to a trial on the merits in Juvenile Court, a judge found the mother unfit to assume parental responsibility for her son Orazio and her daughter Francine, found the children in need of care and protec-

[1]Care and Protection of Francine. The names are pseudonyms. Orazio was born on August 10, 1999, and Francine was born on June 27, 2002.

tion, and committed them to the permanent custody of the Department of Social Services (DSS).[2,3] The mother and Orazio have appealed. We vacate the judgments and remand for further proceedings.

On March 17, 2004, DSS filed a care and protection petition, pursuant to G. L. c. 119, § 24, on behalf of Orazio and Francine. In response to that petition, the judge granted temporary emergency custody of Orazio and Francine to DSS. The mother and father waived their rights to a seventy-two hour temporary custody hearing.

A three-day trial on the matter ended when the mother and DSS entered into a stipulation (which the parties confirmed was a posttrial stipulation) on April 22, 2005.[4] If the mother complied with the terms of the stipulation, she would obtain temporary custody of Orazio and Francine on May 3, 2005.

After the mother regained custody of her children, DSS, on June 27, 2005, sought to add Gena to the petition, sought emergency custody of all three children, and filed an affidavit alleging physical abuse of Francine by the mother. The motion judge, who was not the trial judge, granted temporary emergency custody of Orazio, Francine, and Gena to DSS. A hearing was held on June 30, 2005, during which the motion judge added

---

[2]The judge also found the respective fathers, who did not appear at trial, unfit. The father here is the father of Francine and Gena, and he was the mother's boyfriend.

[3]Gena, a pseudonym, was born on January 4, 2005, and was not found in need of care and protection.

[4]In colloquy with the mother, the trial judge made the following statements:

> "Now, if for some reason [you breach the stipulation], you need to understand that what I will . . . do is . . . remove the children once again. And what's going to happen is we're basically going to go to square one. You'll need to start all over again."

> "So you are . . . on the verge of a victory. . . . And I just want you to keep plugging away, keep working at it, and I'm sure that we'll be able to *dismiss the care and protection soon*" (emphasis added).

Later in the proceeding, the mother's counsel requested clarification as to the effect of the stipulation agreement *following the possible dismissal* of the care and protection. The judge responded that, if the case was dismissed, the stipulation would lapse. The parties concluded the hearing by scheduling a date in August to review the possible dismissal of the care and protection case.

Gena to the petition and returned physical custody of Gena to the mother. The seventy-two hour temporary custody hearing was then continued until July 13, 2005, so that the original trial judge could preside.

On July 13, 2005, at the outset of the proceedings, the judge stated, "Counsel, we're on for a temporary custody hearing. . . ." DSS informed the judge that a couple of weeks earlier, in June, it had received allegations of physical abuse of Francine and had gone before another judge who ordered a temporary emergency removal. The mother's counsel then stated that DSS had not alleged that the mother had "violated the May stipulation in any way," and also indicated that the new allegations had "nothing to do with that [stipulation]." DSS informed the judge that it would present two to three witnesses; the mother's counsel stated that she did not "know who [DSS] would intend to call, but I would have several witnesses." During the testimony of DSS's first witness, the G. L. c. 119, § 51A, investigator, DSS sought to introduce the investigator's § 51A report, which stated that the children had been around their father.[5] This, DSS claimed, was a violation of the stipulation. When the judge directed that the exhibit be numbered 25, noting that "we left off [at the prior hearing] at 24," the mother's counsel objected:

> "Your Honor, I would object to — this is a separate hearing and not part of the trial. And I would object to their being sequentially numbered. I would argue that we need to start over with exhibits as to this — limited to this hearing. . . . [M]y point is that I think the exhibits in this hearing are going to be limited to the exhibits that are introduced by [DSS] in this hearing and not any of the other exhibits."

Noting the mother's objection, the judge stated:

> "I'm going to say this clearly for the record. We're here not just for a temporary custody hearing. We're going to continue the trial where we left off, and we'll see whether or not there's been a violation of any of the conditions [of the stipulation returning temporary custody of Orazio and

---

[5]The § 51A report was not supported. G. L. c. 119, § 51B.

Francine to the mother]. If there has been, I'll make a ruling based on a finding of alleged violation. If I find that there have been no violations, then I'll return custody to the mother and we'll continue with the stipulation that was marked as No. 24."

In response to counsel's query, the judge stated that the standard that would be used as to "the return of custody today would be clear and convincing [evidence, *Care & Protection of Laura*, 414 Mass. 788, 793 (1993), and not a preponderance of the evidence]," as would have applied in a seventy-two hour hearing. *Care & Protection of Robert*, 408 Mass. 52, 68 (1990). DSS offered evidence indicating that the mother had hit Francine. At the July 13 hearing, DSS rested after presenting the testimony of the ongoing social worker, and the G. L. c. 119, § 51B, investigator. The mother's counsel then called the mother, who completed her direct testimony as the first day ended. The judge, indicating that the trial would resume the next day, inquired whether the mother would have any more witnesses. Counsel indicated there would be two more witnesses, although she also noted that she had not had the opportunity to finish talking with one of the witnesses. The judge stated: "We'll finish tomorrow. Witnesses that are here will testify. Witnesses that are not here will not testify. Okay? Tomorrow. 11 a.m. Temporary custody will continue with DSS." The next morning, the mother was cross-examined by DSS (with redirect-examination and recross-examination ensuing). The mother did not call any witnesses, and the testimony thus concluded on July 14, 2005.

Following trial, the judge dismissed Gena from the petition and took the matter under advisement as to Orazio and Francine. On September 8, 2005, the judge, in a detailed written decision,[6] found Orazio and Francine in need of care and protection and the mother and fathers unfit. The judge, however, also found that "[t]he parties stipulated that [the m]other has

---

[6]The judge made forty-eight detailed findings of fact, based upon which he granted permanent custody of Orazio and Francine to the department. The mother and Orazio, who argue that they were denied the opportunity to participate meaningfully in the litigation, have not presented any specific challenges to the findings.

refrained from contacting [the father] and that she was compliant with the service plan."[7] The judge placed Orazio and Francine in DSS's permanent custody.

*Discussion.* The mother and Orazio raise two arguments on appeal. They argue that the judge (1) violated the mother's right to due process by not granting her a seventy-two hour temporary custody hearing following the removal of her children and (2) erred in converting the temporary custody hearing into a trial on the merits.

To provide context, a brief explanation of the care and protection process is required. When DSS receives a report pursuant to G. L. c. 119, § 51A, it screens the complaint to determine whether to conduct a G. L. c. 119, § 51B, investigation. If DSS conducts a section § 51B investigation and that investigation indicates that a child is in an imminent risk of danger, DSS may remove the child and on the next working day petition the court for an emergency custody order. G. L. c. 119, § 51B(3).

Following the filing of an emergency custody petition, G. L. c. 119, § 24, contemplates a three-part process. *Care & Protection of Robert*, 408 Mass. 52, 57 (1990). First, the court schedules an emergency custody hearing, which may be combined with the seventy-two hour hearing (the second hearing). G. L. c. 119, § 24 (requiring a temporary custody hearing be held within seventy-two hours of emergency custody order). Ireland, Juvenile Law § 111, at 375-376 (1993). At the seventy-two hour hearing, the presiding judge's function is to "determine whether a child will be in immediate danger of serious abuse or neglect if returned to his parents or custodian." *Care & Protection of Perry*, 438 Mass. 1014, 1014 (2003). As such, the judge is essentially determining the interim custody of the child pending an outcome of a trial on the merits. Ireland, Juvenile Law § 111, at 376. *Custody of Lori*, 444 Mass. 316, 321 (2005) ("a primary function of the seventy-two hour hearing is to discover and correct any errors that may have occurred during the initial hearing, which, in the interest of expediency, *most likely cannot be exhaustive*" [emphasis added]).

A trial on the merits follows. The purpose of a trial on the

---

[7] The stipulation included keeping the children away from the father and complying with the service plan.

merits is to determine, by clear and convincing evidence, whether the child is in need of care and protection. G. L. c. 119, § 26. *Care & Protection of Erin*, 443 Mass. 567, 570 (2005). If a judge so finds, he may make "an appropriate order for the care and custody of the child." *Care & Protection of Lillian*, 445 Mass. 333, 342 (2005), quoting from *Care & Protection of Benjamin*, 403 Mass. 24, 25 (1988). A trial on the merits can result in the termination of parental rights. G. L. c. 119, § 26. G. L. c. 210, § 3(*c*).

In bypassing the seventy-two hour hearing to a trial on the merits, the judge did not recognize the statutory right of the mother and Orazio to a hearing after the mother's custody was temporarily terminated by the emergency order. See *Care & Protection of Manuel*, 428 Mass. 527, 533, 535-536 (1998) (parties' waiver of first seventy-two hour hearing did not foreclose need to conduct, or parties' right to, a second hearing following DSS's emergency resumption of custody). See also *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982) ("The fundamental liberty interest of [biological] parents in the care, custody, and management of their child does not evaporate simply because they have . . . lost temporary custody of their child to the State"). Although the mother waived the seventy-two hour hearing with respect to the petition filed in March, once DSS assumed emergency custody of Orazio, Francine, and Gena in June, 2005, the mother had a right to another seventy-two hour hearing. *Care & Protection of Manuel*, *supra* at 535-536. The judge was in error in converting the matter to a trial on the merits.

That the seventy-two hour hearing has a distinct and important place in the statutory scheme is reflected by the principle that it cannot be omitted unless waived and that the waiver must entail a "knowing or intelligent relinquishment of [the] . . . right." *Id.* at 532. The omission of this stage, moreover, ran afoul of the general principle that a party is entitled to compliance with the statutory process. See *Care & Protection of Manuel*, 428 Mass. at 532-533 (reversible error where right to temporary custody hearing denied). Cf. *Commonwealth* v. *Parra*, 445 Mass. 262, 265-266 (2005) (holding petitioner for time greater than the statutory sixty-day period for

evaluating sexual dangerousness amounted to due process violation requiring dismissal).

The combining the two hearings over objection did not credit the separate purposes the Legislature designed for each hearing. To this extent, it is essential to emphasize the several important distinctions between the seventy-two hour hearing and a trial on the merits. The seventy-two hour hearing may be the first time the parents learn of the initial results of the "case investigation." As such, counsel will not yet have had an opportunity to investigate its merits. Given the temporal proximity between the emergency custody order and the seventy-two hour hearing, the parent and child may not yet have had a reasonable opportunity to develop a defense. Moreover, counsel at a seventy-two hour hearing may use the hearing to engage in exploratory discovery, essentially conceding temporary custody, probing DSS's witnesses, and saving rebuttal witnesses for the trial on the merits. That the stakes and purposes of the seventy-two hour hearing and the trial on the merits differ is reflected in the higher standard of proof — "clear and convincing evidence" — which governs the latter, *Care & Protection of Laura*, 414 Mass. at 793, in contrast to the "fair preponderance of the evidence" standard which governs the seventy-two hour hearing. *Care & Protection of Lillian*, 445 Mass. at 338, 341. In short, whether parties are facing a seventy-two hour hearing or a permanent custody hearing influences their strategy, their negotiations, and their review and preparation of the evidence.

The mother and Orazio, noting — consistent with the notice that had been provided by the court and the statutory scheme — that they had prepared for a seventy-two hour hearing, argue that, while the judge erred in transforming without notice the seventy-two hour hearing into a trial on the merits, the judgments committing Orazio and Francine to the permanent custody of DSS should be treated instead as temporary custody orders. In essence, they argue that the proceedings should be deemed a seventy-two hour hearing and that a hearing on the merits, with meaningful notice, should be scheduled forthwith. We agree that this suggestion is a sensible one.

While, under our functional analysis, we determine that the mother, Orazio, and Francine were effectively afforded a

seventy-two hour hearing, we consider next whether the transformation of that hearing to a trial on the merits comports with due process. Turning to the effect to be given to the trial on the merits, we note several basic principles. First, "[p]arents have a fundamental liberty interest in maintaining custody of their children, which is protected by the due process clause of the Fourteenth Amendment to the United States Constitution." *Care & Protection of Erin*, 443 Mass. at 570. This interest, however, is not absolute and is subject to State intervention. *Id.* at 570. *Care & Protection of Lillian*, 445 Mass. at 338 (child has absolute interest in freedom from parents' neglect and abuse). Second, before the State can sever the parent-child relationship, due process requires notice and an opportunity to be heard at a meaningful time in a meaningful manner. *Custody of Lori*, 444 Mass. 316, 320 (2005) ("due process rights must be honored whenever a parent is deprived of the right to raise her child"). "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Adoption of Hugh*, 35 Mass. App. Ct. 346, 350 (1993), quoting from *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). See *Adoption of Eugene*, 415 Mass. 431, 435 (1993); *Adoption of Edmund*, 50 Mass. App. Ct. 526, 529 (2000). Third, and relatedly, where a party does not receive timely notice, but does participate in the hearing or receive a future meaningful opportunity to litigate, there is no due process violation. Compare *Adoption of Hugh, supra* (no due process violation despite lack of notice of termination proceeding because father received meaningful opportunity to present facts at rule 60[b][6] hearing), with *Custody of Lori*, 444 Mass. at 322 (judge's failure to accord mother opportunity to defend against charges of unfitness at time of temporary removal amounts to due process violation).

In the present case (on the front line and seeking to adjudicate matters with dispatch), the judge, by unexpectedly reopening a trial during a scheduled seventy-two hour temporary custody hearing following a new emergency petition, committed an error that deprived the mother and children of actual notice. Indeed,

the nature and scope of the hearing were not clear, as it appeared to encompass not only the allegations which were the subject of the March, 2004, petition, but also the new allegation set forth in the June, 2005, emergency petition. All of the parties — including DSS, which had not suggested the truncated process — were chasing a moving target, as, within the span of minutes, a matter which had been docketed as a seventy-two hour hearing was suddenly transformed into a permanent custody trial of uncertain dimensions. Under these circumstances, the mother and children were deprived not only of actual notice, but also of a meaningful opportunity to participate in the litigation. Cf. *Custody of a Minor*, 375 Mass. 733, 745 (1978) (one week is sufficient notice of care and protection trial). See generally *Adoption of Mary*, 414 Mass. 705, 710 (1993) (requiring parents have opportunity to "effectively" rebut adverse allegations).

Accordingly, the judgments committing the children to the permanent custody of DSS are vacated, and a hearing on the merits, with meaningful notice, should be scheduled forthwith. At this hearing, the mother and children should be provided with the opportunity to present additional evidence.

*So ordered.*