JEFFREY WILKINS *vs.* RONALD COOPER.

No. 07-P-26.

Hampshire. January 23, 2008. - July 29, 2008.

Present: RAPOZA, C.J., ARMSTRONG, & RUBIN, JJ.

*Practice, Civil,* Vacation of judgment, Execution. *Due Process of Law,* Notice. *Waiver.*

In a civil action where final judgment was vacated and a new judgment entered after a hearing held without notice to the plaintiff or an opportunity to be heard, due process requirements limited the scope of a judge's discretion to deny the plaintiff's motions to undo those actions; accordingly, this court remanded the case for further proceedings to determine whether the plaintiff had waived the right to a hearing. [276-279]

CIVIL ACTION commenced in the Superior Court Department on August 31, 1995.

Posttrial motions were heard by *Peter A. Velis,* J.

*Janet H. Pumphrey* for the plaintiff.

*Alan Seewald* for the defendant.

RUBIN, J. The plaintiff appeals from two orders of the Superior Court, one denying his motion to vacate final judgment entered without notice to him or his counsel, and one revoking execution for the plaintiff of a previous, favorable final judgment that the judge ordered vacated. Resolution of the appeal requires us to apply long-standing principles of procedural due process to the particular circumstances before us.

I.

An understanding of the issues presented requires that we first sort out the long, tangled history of this litigation. This case arose from a dispute between two former business partners, the plaintiff (Wilkins) and the defendant (Cooper), who were the sole officers

and shareholders of Advanced Patent Services, Inc. (APSI), a firm that provided two business services: patent searches and full representation in registration of patents. The parties had a falling out, and in late 1995, Wilkins brought the instant action asserting breach of contract against Cooper. The parties agreed to submit the case to binding arbitration, along with another action brought in the Supreme Judicial Court seeking dissolution of APSI, see G. L. c. 156B, § 99, and an action in the Franklin Division of the Probate and Family Court Department seeking to partition the parties' jointly held real estate.

On June 3, 1996, the arbitrator issued an award that contained several elements. To begin with, Cooper was required to pay Wilkins $16,498.75, representing his share of mortgage payments on business property that had been advanced by Wilkins. In addition, the corporation was to be dissolved forthwith, and the parties were required to divide in equal shares its assets and liabilities.[1] Finally, the jointly held real estate was to be offered for sale, and the proceeds were to be used to pay corporate liabilities with the balance ultimately to be divided between the parties. It is the second element, concerning the division of the assets and liabilities of the corporation, that concerns us here.

Nine days after the arbitrator issued his award, Cooper applied in the Superior Court to confirm and enforce the arbitrator's award. He urged that, in the face of the award, Wilkins was continuing to operate APSI, was accepting new customers and payments, and was incurring additional liabilities.[2] On June 27, 1996, a judge held a hearing at which the parties reported they

---

[1]Cooper and Wilkins were also both precluded from using the corporation's name or acronym in any future business ventures.

[2]Cooper further alleged that Wilkins removed the records of APSI to an undisclosed location; changed the computer access code; took the mailbox key; took control of APSI's toll-free telephone number which was still being advertised under a six-month contract; sent letters to clients that owed APSI money, telling them that APSI had been reorganized and that Wilkins's new business, Franklin Forge, would service their accounts; and had all APSI's mail forwarded to Franklin Forge. By contrast, Wilkins took the position that Cooper took much of the little personal property the corporation owned, and that the business had substantial liabilities at the time it was dissolved: Wilkins stated that he and Cooper had already divided funds that had been paid in advance by clients and that Cooper "basically decided to ditch and run from this corporation." Wilkins claimed that he voluntarily performed the already-paid for services for no additional income. We need not and do not resolve

had reached an agreement, and she confirmed the arbitration award "in accordance with agreement of the parties made on the record this date." An examination of the transcript of the hearing reveals the parties' oral agreement that Wilkins would, by July 2, 1996, provide Cooper with an accounting, in writing, "for all funds that have gone into and come out of [APSI]'s bank accounts as of that date"; that by July 12, 1996, Wilkins would "sign a real estate listing agreement, reserving an auction option"; that the firm's accountant, Edward Margola, would take the proceeds of the sale of the real property and distribute them in accordance with the arbitrator's award; and, that Margola would "act as the receiver under law for purposes of dissolving, accounting and liquidating the assets of the company." Wilkins never provided the accounting called for by the court order.

On January 28, 1997, for reasons unexplained in the record, a second judge entered an order dismissing Wilkins's complaint. On October 5, 1999, a third judge, who issued the orders now under review, upon application of Wilkins, vacated that dismissal and entered another judgment (1999 judgment) confirming the arbitrator's award. On December 23, 1999, Cooper made a motion seeking to stay enforcement of that portion of the arbitrator's award requiring him to make the payment of $16,498.75 to Wilkins and seeking an order compelling an accounting so that the payment to Cooper by Wilkins of half the assets could proceed. On December 9, 1999, an execution was issued on the judgment in favor of Wilkins in the amount of $16,498.75 plus interest; the deputy sheriff recorded the execution and suspended further action. Cooper has averred that he never received notice of the execution. Cooper's motion seeking a stay was denied by a fourth judge on January 3, 2000, but Cooper moved for reconsideration, and after hearing, his motion was granted on January 31, 2000. The fourth judge stayed enforcement of the provision requiring Cooper to pay Wilkins, and ordered that Wilkins serve Cooper with an accounting within forty-five days. Again, Wilkins failed to provide the required accounting.

In March, 2000, after the forty-five days had expired, Cooper brought a complaint for contempt, alleging that Wilkins had not

---

any of the issues of fact contained within the parties' allegations against each other.

provided the accounting as ordered. The motion also asked that the court accept Cooper's own accounting, which he described as a "reliable," "good faith" estimate based on the records he had in his possession. He asserted that his half of the net value of the corporation was $118,410.36, and he asked that judgment in that amount be entered against Wilkins. A fifth judge, the contempt judge, found Wilkins in contempt and ordered him to deliver to defendant's counsel records of both APSI and his new company, Franklin Forge, by April 18, 2000.[3]

On June 1, 2000, Cooper filed a motion under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), for relief from judgment, and a motion for entry of final judgment or, in the alternative, for entry of interlocutory judgment. He asserted that Wilkins had not complied with the contempt order, but had delivered to Cooper's counsel only a portion of the records ordered. Based on the documents he then possessed, including these new records, he asserted that the corporation was worth $154,107.48, and that his share of the corporate assets was therefore $77,053.74, rather than the $118,410.36 he had previously claimed; he submitted documentary evidence supporting this assertion. He sought a judgment offsetting the $16,498.75 he owed Wilkins by the amount he claimed as half the value of the corporation; that is, he sought judgment in his favor in the amount of $60,554.72.

These two motions remained under advisement for over four years.[4] In 2004, the court sent out a notice of a status conference, to be held by the judge who had entered the 1999 judgment. The notice was sent to the attorneys of record for both Wilkins and Cooper.

Only Cooper's attorney showed up for the status conference, which was held on June 14, 2004. Cooper's attorney candidly explained to the judge: "[Mr. Wilkins] has never failed to appear. This is the first occasion that I've been in court that he has failed to appear. . . . [T]his is the first time he's ever not physically been here." Later, counsel said, "as far as I under-

_____

[3]Wilkins filed a notice of appeal of that contempt judgment, but never took any additional steps to prosecute that appeal.

[4]The record does not reflect any reason for this remarkable delay, though both parties have indicated that they believed the motions were held under advisement by the contempt judge.

stand, [Wilkins's attorney] Mr. [Richard] Howland has left the practice of law." The judge asked the clerk if notice had been sent to Howland; the clerk said it had, but reported receiving no response.

Despite the absence of counsel for Wilkins, or Wilkins himself, and without notice, the judge converted the status conference to a hearing on the motions that had been pending for so long. The judge, however, said he would make an entry "without prejudice just in case Mr. Howland . . . is out of practice and for some reason it's to the detriment of Mr. Wilkins." The judge also expressed concern that the contempt judge might still have the motions under advisement, and that any actions he took might inappropriately interfere with her authority over the case. The judge granted the motion for relief from judgment under rule 60(b) without prejudice. He also granted the motion for entry of final judgment without prejudice, and on July 9, 2004, as Cooper had requested, the judge entered final judgment (2004 final judgment) in favor of Cooper in the amount of $60,554.72.

Attorney Howland, whose retirement from practice is noted on the records of the Board of Bar Overseers (of which we take judicial notice), apparently received not only the notice of the status conference, but a copy of the court's postjudgment rulings (2004 rulings). While he did not notify Wilkins in advance of the status conference, he apparently did inform him of the entry of judgment.[5] Wilkins hired a new attorney, and on August 31, 2004, he filed a motion to vacate the 2004 final judgment and to

---

[5]Howland also sent a letter to the judge stating that he had retired on December 31, 1998; that after Cooper's motions were filed in 2000 he believed, since the judgment had been executed upon and not appealed, the case was "a nullity"; that after the motions had been taken under advisement he had sought to discover their status from the clerk of the court; that he had told his client that, with no effort to prosecute the motions, the case was over; that, pursuant to the advice of the Board of Bar Overseers for inactive retired attorneys, he had delivered the entire file "years ago" to Wilkins; and, that he had not filed a "disappearance" in the case — which we take to mean a notice or motion of withdrawal — because he thought it was closed. He further asserted that when he received the notice of the status conference he had believed it was simply the "usual copy to former counsel."

There is some information in the record that calls into question the account given by Attorney Howland in his letter. The docket indicates that Howland filed a notice of appearance in this case on April 29, 1999, after the date of

vacate the order granting Cooper's motion for relief from the earlier judgment. Cooper opposed the motion and filed, among other things, a motion to revoke and discharge execution of the 1999 judgment.[6]

On March 15, 2005, a hearing was held before the judge who had entered the 2004 rulings, at which counsel for both parties were present. The primary argument made by Wilkins was that the 2004 final judgment should be vacated and the case remanded to an arbitrator to determine whether there was any value to the corporation and, if there was any, to divide it. In the alternative, he sought a hearing before the Superior Court. In sum, he asked to be "allow[ed] . . . an opportunity to present his claim" that the corporation was not worth $154,107.48. Counsel for Cooper responded that the reason no one had ever held a proceeding to determine what the assets of the corporation were was that Wilkins had failed to comply with the court's three previous orders: the two requiring that he perform an accounting and the contempt order requiring him to provide information.

On December 8, 2005, the judge denied without comment Wilkins's motion to vacate, and allowed without comment Cooper's motion to revoke and discharge execution. It is from these orders that Wilkins now appeals.

## II.

The 2004 final judgment was entered after a hearing of which neither Wilkins nor his counsel had notice. It is one of the basic principles of due process that an adjudication may not enter

his asserted withdrawal from the active practice of law. Further, the plaintiff's motion to vacate dismissal and enter judgment on the arbitrator's award, filed the same day, bears Howland's signature. Indeed, Howland's signature appears on Wilkins's final filing before the status conference, the April 24, 2000, notice of appeal from the contempt order. Board of Bar Overseers records indicate that Howland notified the board of his retirement on November 27, 2000. Further, Wilkins himself filed an affidavit below saying, contrary to Howland's account, he believed Howland had personally delivered the file to him only "in late May or early June of 2004," that is, less than a month before the status conference, and that Howland did not tell him at that time that anything was pending or scheduled.

[6]He also filed a motion to dismiss the long-pending appeal of the contempt order, which, with Wilkins's agreement, was granted at the March 15, 2005, hearing.

without the parties each being given notice and an opportunity to be heard. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *Commonwealth* v. *Olivo*, 369 Mass. 62, 68-69 (1975). Even in circumstances where a court is not required to hold a hearing, once it determines that it is necessary to do so, that hearing must comport with due process. Accord *Bahceli* v. *Bahceli*, 10 Mass. App. Ct. 446, 450 (1980) (court is not always required to hold evidentiary hearing before deciding motion for relief from judgment).

Here, the 2004 hearing on Cooper's postjudgment motions was undertaken without proper notice to Wilkins or a meaningful opportunity for him to be heard, presenting a due process problem of the type described in *Care & Protection of Orazio*, 68 Mass. App. Ct. 213, 220-221 (2007) (conversion of proceeding to address one question, interim custody of child, into proceeding to address another, whether child was in need of such protection, deprived parties of actual notice and meaningful opportunity to participate in litigation). That attorney Howland had retired is irrelevant to our analysis. The status conference should not have been converted to a hearing on the merits, at least in the absence of Wilkins's counsel. Even assuming Wilkins (through his counsel) received proper notice that a status conference would be held on June 14, 2004, he had no notice that it might be converted to a hearing on the merits. The failure of a party's counsel to attend a status conference does not waive that party's right to notice of, and an opportunity to be heard at, a hearing on the merits of the underlying matter.

The question presented now is the soundness (in light of the due process problem with the 2004 final judgment) of the denial of Wilkins's motion to vacate that judgment and the allowance of Cooper's motion to revoke execution of the 1999 judgment. The disposition of those motions was committed to the motion judge's sound discretion. See *Tai* v. *Boston*, 45 Mass. App. Ct. 220, 224 (1998) (motions for relief from judgment committed to discretion of motion judge). Judicial discretion, however, is not a unitary concept, and its scope varies depending upon the circumstances in which it is to be exercised. See, e.g., *Matthews* v. *Commissioner of Correction*, 449 Mass. 1021, 1023-1024 (2007) (laying out factors relevant to exercise of discretion in particular circumstance).

Here, where final judgment was vacated and a new judgment entered after a hearing held without notice or an opportunity to be heard, the requirements of due process limited the scope of the motion judge's discretion to deny the aggrieved party's motions to undo those actions. See *Commonwealth* v. *Roxbury Charter High Pub. Sch.*, 69 Mass. App. Ct. 49, 53 (2007) ("[A]buse of discretion . . . occurs where judicial action exceeds the legal framework under which the judge is authorized to act"). Before deciding to leave standing the 2004 judgment for $77,053.74, entered without prejudice against Wilkins, the motion judge was required by due process either to hold the hearing sought by Wilkins on the value of the corporation, or to make a determination that Wilkins had waived his right to be heard by failing to provide the documents required under the contempt order. As to the latter question, Cooper averred that only some of the documents called for in the order were delivered, but no evidence has ever been taken on the issue. Only after taking evidence and determining that Wilkins failed to comply with the contempt order could the judge properly have found waiver.[7] This is not to suggest that, if Wilkins did not provide the documents required, the judge was bound to hold that he had waived his right to a hearing on the value of the corporation. But a determination that Wilkins had waived that right could properly have been made only on the basis of such a finding of fact.[8]

Additional proceedings therefore were required before the

---

[7]The judge was not free, consistent with principles of fundamental fairness, to find waiver solely on the basis of Wilkins's failure to provide the original two court-ordered accountings. Cooper had previously argued in the contempt proceeding that, because of Wilkins's failure to provide the accountings, judgment should simply be entered in Cooper's favor on the basis of his own calculations of the value of the corporation. The contempt judge declined to order that relief, but instead ordered Wilkins to deliver documents to Cooper's attorney. Wilkins was therefore entitled to do so. In the absence of a failure to comply with the contempt order, therefore, Wilkins could not (on the basis of the failure to provide the previously ordered accountings) properly be found to have waived his right to contest the amount due Cooper for half the value of the corporation.

[8]The judge was not required to accede to Wilkins's request to employ a new procedure for determining the value of APSI. The court had, many years previously, twice ordered that that value be determined by way of an accounting. Wilkins was not entitled years later to the different procedure he requested by which the value would not have been determined by the court but would have been submitted to arbitration for calculation in the first instance.

orders of the motion judge could lawfully have been entered. Those orders consequently are vacated, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*