NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1166

ARVIND KUMAR JAY JAISWAL

vs.

RAHUL CHATURVEDI & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Defendant Rahul Chaturvedi appeals from a judgment granting the plaintiff, Arvind Kumar Jay Jaiswal, declaratory relief, injunctive relief, and attorney's fees and costs.  On appeal, the defendant appears to argue that a Superior Court judge abused her discretion in allowing a motion for a preliminary injunction and that a second judge abused his discretion in finding the defendant in contempt by entering a final amended judgment in favor of the plaintiff that, among other things, permanently enjoined the defendants from performing certain acts.  We affirm.

---

[1] Moolex, LLC, which did not participate in this appeal.

Factual and procedural background. In January 2023, the plaintiff filed a verified complaint in the Superior Court alleging that the defendant had fraudulently recorded Uniform Commercial Code (UCC) filings against the plaintiff, his family, and companies affiliated with the plaintiff. In essence, the plaintiff claimed that even though he never entered into any agreement with the defendant and never granted the defendant a security interest in his assets, the defendant filed numerous financial statements with the Massachusetts Secretary of State and in several other States asserting that he held such an interest.[2]

The plaintiff requested declaratory judgment that the plaintiff is not a debtor of the defendant, that there are no security agreements between the plaintiff and defendant, and that the defendant filed false financial statements alleging an

---

[2] As alleged, the defendant claimed that the plaintiff agreed to become a founding member of his limited liability company, Moolex, and separately agreed to become a party to an invention called "CA-System," which, plaintiff alleges, is described on Moolex's website as an "imaginary cross border commercial goods train network." Sometime in July 2018, the defendant claimed he had acquired a security interest in plaintiff's assets when the plaintiff entered into a "Founding Member Agreement" with Moolex. The plaintiff denied ever entering into such an agreement and made repeated requests through counsel to be provided with a copy of the purported security agreement. Despite those numerous requests, the defendant was not forthcoming with any documentation or proof of a security agreement.

interest in the plaintiff's assets.  The plaintiff also requested that the court order the defendant to remove all documents that were falsely filed with the Secretary of State and to refrain from filing such documents in the future. Finally, the plaintiff sought an award of damages and attorney's fees.

At the time he filed the complaint, the plaintiff requested that the court issue a preliminary injunction requiring the defendant to remove the unauthorized UCC filings and that the defendant be ordered to show cause as to why final judgment should not enter in plaintiff's favor by providing the court evidence of a written agreement securing an interest in the plaintiff's assets.  A preliminary injunction hearing was scheduled for January 19, 2023, and notice was given to the parties.  On the day of the hearing, the defendant filed a notice of removal to Federal court.  On May 15, 2023, a Federal court judge, noting that there was no basis for Federal jurisdiction, remanded the case back to the Superior Court.

On June 8, 2023, a judge of the Superior Court (motion judge) heard arguments on the plaintiff's motion for a preliminary injunction and motion to compel the defendant to provide the court with documentation of the purported security interest.  The motion judge heard from both the plaintiff's attorney and the defendant, appearing pro se.  The plaintiff

argued that the defendant had falsely claimed a security interest in the plaintiff's assets and had refused to provide any proof that one existed for over two years. The plaintiff also argued that a preliminary injunction and show cause order should issue because the case boiled down to whether in fact a valid security interest agreement, which is required to file with the Secretary of State's office, existed. In turn, the defendant argued that a written agreement existed and offered several different reasons why he did not have it in his possession. First, he said, "It's being filed in federal court as we --." Then he told the judge, "Your Honor, this is a chattel. It's stored according the UCC control systems. Legal notices of -- I have delivered an entire copy of the chattel, which he has refused to accept, the plaintiff. He rejected that." The judge gave the defendant wide leeway to provide his version of the facts and to present his arguments. Finally, the judge told the defendant that she wanted the agreement to be presented to her at the hearing. The defendant said that he was working on it and would "have it filed here, if you require." The judge replied, "No, today. Right now. That's the hearing, right now." The defendant responded, "Your Honor, I am going to give the authenticated agreement in federal court. I can provide a copy here." A few moments later, he told the judge, "I absolutely have those contracts and the rights and the

security agreements."  When pressed by the judge as to where the written agreement was, the defendant said, "[I]t's in the control system of the UCC."

At the conclusion of the hearing, the motion judge issued the preliminary injunction, ordering the defendant to remove any financial statements he had filed against the plaintiff, his family, or any businesses associated with the plaintiff, and to cease filing further UCC filings relating to the plaintiff.  The judge also ordered the defendant to show cause why final judgment should not enter in the plaintiff's favor, by providing the court with evidence of a written document granting the defendant a security interest in the plaintiff's assets.  The judge gave the defendant fourteen days, until June 22, 2023, to comply with the show cause order.

On June 21, 2023, the defendant once again attempted to remove the case to Federal court.  This motion was denied, and the Federal judge warned the defendant "that any future attempt to remove the case to federal court without a plausible basis may result in sanctions and an award of attorney's fees."

The compliance date of June 22, 2023, came and went, and the defendant did not file the written agreement.  On July 6, 2023, the defendant still had not filed any documents with the court evidencing a security interest in the plaintiff's assets.  However, on that date, the defendant filed an "emergency motion"

to stay execution of the show cause order (despite the fact that the time for compliance had already lapsed) and to impose sanctions on the plaintiff. This motion was denied. On July 27, 2023, when the defendant still had not produced the documentation ordered in the show cause order, the plaintiff moved for a finding of contempt and for final judgment to enter.

On July 28, 2023, a different judge (contempt judge) conducted a hearing on the plaintiff's request for final judgment and a finding of contempt. The contempt judge gave the defendant an opportunity to be heard and ordered the defendant several times to provide the documents proving that he had a security interest in the plaintiff's assets. The defendant stated that the documents did in fact exist but that he was not prepared to submit them. He referenced some concerns about intellectual property and trademark secrets in the agreement and suggested that if there were an impoundment order he would provide the court with redacted documents under seal. The judge assured the defendant that he would take his motion to file the documents under seal under advisement.

In a well-reasoned decision, the contempt judge found the defendant in willful contempt of the motion judge's show cause order and in willful contempt of the contempt judge's oral order at the contempt hearing. Specifically, the defendant had been repeatedly ordered to provide a copy of the alleged agreement or

6

security agreement underlying the filing of the UCC statements and had repeatedly refused to do so. The judge added that the defendant offered "no factual or legal excuse as to why he had not complied with the terms of the Court's injunction." The judge concluded that no written document existed, that the defendant filed fraudulent financial statements claiming to have a security interest in plaintiff's assets, and that the defendant had committed a fraud on the court by repeatedly representing that such an agreement was in existence.

Accordingly, the contempt judge entered a final judgment in the plaintiff's favor, declaring that the plaintiff is not a debtor of the defendant and that there is no security agreement between the plaintiff and the defendant, and the contempt judge permanently enjoined the defendant from filing any further UCC filings and ordered him to remove any UCC statements he had filed against the plaintiff, his family, or any business entity affiliated with the plaintiff. Finally, the contempt judge allowed the plaintiff's motion for attorney's fees in the amount of $74,443.16. The defendant now appeals.

Discussion. We first note that appellate review is significantly hampered by the defendant's failure to comply with the Massachusetts Rules of Appellate Procedure, as several arguments in his brief lack citation to relevant legal authority, his record appendix consists largely of unrelated

7

documents, and often his arguments are not based upon a recognizable legal theory or claim, such as his claims of "Manifest Injustice in the Face of Coerced Solomon Choices" and violation of the "Economic Espionage Act."  An appellant's brief must contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities and parts of the record on which the appellant relies."  Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  The rule "is more than a 'mere technicality.  It is founded on the sound principle that the right of a party to have this court consider a point entails a duty; that duty is to assist the court with argument and appropriate citation of authority.'"  Cameron v. Carelli, 39 Mass. App. Ct. 81, 86 (1995), quoting Lolos v. Berlin, 338 Mass. 10, 14 (1958).  Nonetheless, we have reviewed the record and address what appears to be the substance of the defendant's challenges and general objections.

1.  Order dated June 8, 2023.  The defendant devotes much of his brief to claiming that the motion judge erred on June 8, 2023, in ordering a preliminary injunction.  We need not address these arguments, however, because the preliminary injunction lapsed when the final judgment entered.  Any question concerning the preliminary injunction is now moot.  See Judge Rotenberg

8

Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation (No. 2), 424 Mass. 471, 472 (1997).

2. _Orders dated July 28, 2023; July 31, 2023; August 1, 2023; and August 16, 2023_. The defendant also appears to argue that the contempt judge erred in entering the July 28, 2023 order granting the plaintiff final judgment, a permanent injunction, attorney's fees, and denying defendant's motion under seal and to impound. The heft of the defendant's argument appears to be that the plaintiff was untruthful and perjured himself in court. The defendant also claims that his unsupported statement to the court alleging the existence of a security agreement was sufficient to defeat the request for a permanent injunction.

Trial judges have broad discretion to grant injunctive relief, and we review a judge's decision for an abuse of that discretion. LightLab Imaging, Inc. v. Axsun Techs., Inc., 469 Mass. 181, 194 (2014). This means that we may reverse the judge's decision only if "we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (citation and quotation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The judge provided the defendant with notice and an opportunity to be heard, which satisfied the requirements of due

9

process. See Wilkins v. Cooper, 72 Mass. App. Ct. 271, 276-277 (2008). The defendant was given ample time to provide documentation supporting his claim that the plaintiff signed a security agreement. The defendant refused to do so when given every opportunity, and final judgment and injunctive relief was in order. The entire basis of the plaintiff's suit was that the defendant falsely filed statements with the Secretary of State's office purporting to have a financial interest in plaintiff's assets. Simply put, there was no abuse of discretion in the judge's order for final judgment or a permanent injunction when the defendant either refused or could not provide any evidence an agreement existed. Whether the defendant intentionally committed a fraud in the filing or whether he acted in good faith does not change the outcome that final judgment was warranted because the defendant could not show that he had an interest.

Nor do we discern any error in the judge's finding the defendant to be in contempt of court. "We review the judge's ultimate finding of contempt for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of fact for clear error." Jones v. Jones, 101 Mass. App. Ct. 673, 688 (2022). The motion judge's June 8, 2023 order to show cause was clear and unequivocal, as were the contempt judge's orders at the July 28, 2023 hearing ordering the

10

defendant to provide the court with the required documentation evidencing an agreement.  There can be no dispute that the defendant was given adequate notice of what was expected and a generous amount of time to deliver the evidence.

Once a judge finds that a party received a clear and unequivocal command, the judge must then find, by clear and convincing evidence, that the party "disobediently refrained" from following that command.  Warren Gardens Hous. Coop. v. Clark, 420 Mass. 699, 701 (1995).  Here, the defendant's repeated disobedience was clearly and convincingly established.  Again, the defendant was given ample opportunity to produce evidence of any security interest underlying the UCC filings, and he never did so.  The judge's ultimate finding of contempt was not an abuse of discretion.

Finally, the award of attorney's fees was well warranted.  "As a matter of law, the awarding of attorney's fees and costs is an appropriate element of a successful civil contempt proceeding" (quotation omitted).  Martinez v. Lynn Hous. Auth., 94 Mass. App. Ct. 702, 708 (2019).  When attorney's fees are awarded, the amount is in the discretion of the trial judge, see McGrath v. Mishara, 386 Mass. 74, 87 (1982), and on appeal our review is to determine whether the award was clearly erroneous.  See Kennedy v. Kennedy, 400 Mass. 272, 274 (1987).  Nothing in the record suggests any error in the award or amount of

11

attorney's fees.  See Cargill, Inc., v. Beaver Coal & Oil Co.,
424 Mass. 356, 363 (1997).

Conclusion.  The amended judgment is affirmed.[3]  The
plaintiff's request for appellate attorney's fees on the basis
that the defendant's appeal is frivolous is allowed.  In
accordance with the procedure specified in Fabre v. Walton, 441
Mass. 9, 10-11 (2004), the plaintiff may, within fourteen days
of issuance of the decision in this matter, submit an
application for appellate attorney's fees and costs.  The
defendant shall have fourteen days thereafter to respond.

So ordered.

By the Court (Massing,
  Walsh & Brennan, JJ.[4]),

Clerk

Entered:  February 5, 2025.

---

[3] Other points, relied on by the defendant but not discussed
in this decision, have not been overlooked.  We find nothing in
them that requires further discussion.  See Commonwealth v.
Domanski, 332 Mass. 66, 78 (1954).

[4] The panelists are listed in order of seniority.

12