NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-220                                          Appeals Court

ADOPTION OF EDEN (and two companion cases[1]).


No. 14-P-220.

Worcester.    October 2, 2014. - September 11, 2015.

Present:  Green, Rubin, & Agnes, JJ.


Minor, Care and protection.  Parent and Child, Care and
     protection of minor.  Practice, Civil, Care and protection
     proceeding.  Child Abuse.



     Petition filed in the Worcester Division of the Juvenile
Court Department on January 4, 2011.

     Following review by this court, 87 Mass. App. Ct. 1109
(2015), the case was heard by Anthony J. Marotta, J.


     Tamar M. Gureghian for the mother.
     S. Michael Fournier for the father.
     Roy Vincent Montoya for Department of Children and
Families.
     Christine M. Durkin for the children.


     RUBIN, J.  This case involves the proper role of

allegations in decisions involving the termination of parental

---

[1] Adoption of Sam and Adoption of Mark.  The children's
names are pseudonyms.

rights, and the proper role of the appellate courts in reviewing those decisions. Both the mother and the father appealed in this case from decrees terminating their parental rights to their three minor children, Eden, Sam, and Mark. We affirmed the decrees with respect to the mother, but remanded the father's case to the Juvenile Court judge for clarification of the basis of his decision with respect to the father. See Adoption of Eden, 87 Mass. App. Ct. 1109 (2015). The judge issued supplemental findings of fact and conclusions of law, and we now affirm.

1. Background. There was never any doubt in this case that the evidence was sufficient to support the termination of the father's parental rights. See Adoption of Peggy, 436 Mass. 690, 701 (2002) ("Before a judge may award permanent custody of the child to the department, the judge must find, by clear and convincing evidence, that the natural parent is unfit to further the welfare and best interests of the child"). In his original findings of fact and conclusions of law, the judge documented many specific instances of behavior that either harmed the children or placed the children at a great risk of harm. Among other things, the judge found, and it is not contested, that Eden, the oldest child, was left at home when she was five years old to babysit the then one year old middle child, Sam, who has sickle cell anemia. After the Department of Children and

Families (department) obtained custody of the children, parental visits with the children frequently ended either with the parents being escorted out by the police or the visit being cut short by argument.  At a meeting with a department caseworker, the mother began yelling at the caseworker and the father put his hands over the mother's mouth.  The mother and father then began hitting each other.  Due to the commotion three or four Worcester police officers had to come to the room, and the mother was arrested, shackled, and carried from the room yelling and screaming.

The judge also found, among other things, that the parents do not appreciate the medical needs of the children, which are considerable.  He found that Sam was hospitalized for four days shortly after coming into the department's custody, and required a blood transfusion, apparently because of his sickle cell anemia.  Sam also has learning disabilities and does not have appropriate language skills at age five, does not speak more than one or two words, and needs constant work with his speech. He has also suffered from fevers and dehydration.  He requires constant medical attention.  Eden is on an individualized education plan (IEP) for global learning disabilities, and at age eight cannot read or write and has comprehension difficulties.  At the time the department became involved with

the family, Eden was five years old and had not seen a medical professional for three years.

The judge's initial decision, however, was ambiguous about the extent to which the judge relied on allegations or findings of sexual abuse by the father. The department had many interactions with the family between August, 2009, and January, 2011. But the instant case has its genesis in an allegation of sexual abuse by the father that was made in January, 2011.

The judge's decision reports the allegations in great detail. On January 4, 2011, two G. L. c. 51A reports were filed by mandated reporters alleging the sexual abuse of Eden by the father. On January 1, 2011, the mother had brought Eden to the hospital to be examined. The mother stated that she noticed Eden's vaginal area to be "odd in shape" and that her daughter was complaining of pain while urinating and walking. After Eden made the statement that the father had "put tail in me" pointing to her vaginal area, the mother telephoned 911, and Eden was brought to the hospital to be evaluated.

Eden reportedly told the emergency medical services worker during the ride to the hospital that she wanted to go to a safe place, as the father had knives with him and would harm people in the home. During a Sexual Abuse Intervention Network (SAIN) interview, apparently not viewed by the judge but described by him, "[Eden] stated that Mother and Father both told her to lie

about any sexual abuse and to instead say that a boy had touched her, because Mother did not want Father to go to jail because they had 'too many babies' to take care of and Mother did not have any money. [Eden] stated that the sexual abuse happened on more than one occasion -- 'a lot, two times, no I mean a lot.' She said the incidents happened when Mother was at church and that her Father came in the room where she was sleeping and took her jeans off, but not her underpants as she was not wearing any, and then put his 'tail' in her."

The father was arraigned on charges relating to this allegation and detained by United States Immigration and Customs Enforcement (ICE) because he was in the country illegally, and he was held on an ICE detainer. On January 4, 2011, the department filed an emergency care and protection petition seeking custody of the children, which was granted, and it was then that the children were removed from the mother's care.

The judge's decision reports that after the children were placed in foster care by the department, "Mother admitted that she followed [Eden] to school to find out where she was going. At the school, Mother pretended to be someone else interested in sending her daughter to that school, and asked for a tour to gain access to the school. However, at some point, Mother wandered away from the tour, found her daughter and brought her to a downstairs bathroom in the school. Mother had brought her

daughter into a bathroom stall and was telling her 'to speak the truth and stop making up stories' regarding the recent allegations of sexual abuse that [Eden] had made against Father."

Shortly after this incident Eden recanted her sexual abuse allegations. The district attorney's office ultimately filed a nolle prosequi in the father's criminal case. The mother was subsequently charged with intimidation of a witness. When arrested, she was sent to a psychiatric hospital. At the time of the termination trial that charge was still pending.

These allegations formed a center of gravity in the judge's initial decision. However, despite their apparent significance to his decision, the judge made no finding with respect to these allegations. As judicial decisions sometimes do, his simply recited the evidence, stating "there have been serious allegations against Father concerning the sexual abuse of [Eden]. These allegations resulted in criminal charges and a ten (10) month detention of Father. The charges were ultimately dropped."

2. <u>Analysis</u>. If the judge meant that among the bases for his decision to terminate the father's parental rights were the serious allegations of sexual abuse, it would have been our responsibility to vacate the decrees. It is a bedrock principle that parental rights may not be terminated on the basis of an

unproven allegation, even one as grave as this.  See, e.g., Custody of Eleanor, 414 Mass. 795, 800-801 (1993) (later-withdrawn allegation of sexual assault "in the absence of any corroboration or physical evidence of sexual abuse . . . cannot be said [to establish] parental unfitness . . . by clear and convincing evidence").  For this reason, it is essential that trial judges who recite allegations explain their significance to the disposition of the case.  Here, the department urged us to affirm even assuming the judge meant to rely on the allegations, because of the sufficiency of the other evidence in the record to support termination.  But it is for the trial judge, not us, to determine in the first instance whether unfitness has been proven by clear and convincing evidence, and whether termination of parental rights is in the best interests of the children.  If a judge's conclusion rests on an improper factor, the judgment must be vacated and the case remanded for reconsideration without use of that factor.  Cf. Commonwealth v. Arroyo, 451 Mass. 1010, 1011-1012 (2008).

To be sure, our courts have held that where a decision terminating parental rights contains a small number of minor factual errors, we may nonetheless affirm the decree without recourse to a remand to the trial court.  See, e.g., Adoption of Sherry, 435 Mass. 331, 336 (2001) (affirming termination of parental rights despite error in excluding information at trial,

stating "we need not disturb a judgment when error did not affect the outcome"); Adoption of Peggy, 436 Mass. at 702 (affirming termination of parental rights despite two erroneous findings "[b]ecause they relate only marginally, if at all, to the judge's ultimate conclusion of unfitness, [thus] we consider them harmless").  But given the prominence of the alleged sexual abuse in the judge's decision, that approach would not have been appropriate here.  Consequently, we remanded the case to the trial judge for clarification of the basis for his determination.  See Adoption of Eden, 87 Mass. App. Ct. at 1109.

3.  The judge's supplemental findings of fact and conclusions of law.  The judge promptly provided us with supplemental findings of fact and conclusions of law.  In the findings of fact he reported that he "did not hear sufficient evidence to make a determination by a preponderance of the evidence that the sexual abuse by Father had taken place," and that he "ma[de] no finding as to the truth of the allegations of sexual abuse by Father."  He made clear, however, that in his initial decision he "did not rely on the sexual abuse allegations."

Rather, he placed "substantial weight on the inappropriate and troubling way in which . . . Father . . . chose to deal with those allegations."  "[R]ather than work with the [department] to obtain services to heal the obvious handicaps of his family,

Father refused to accept services, made accusatory claims of racial bias, and acted in a manner which further harmed his children."  He repeated some of the facts recited above concerning domestic violence, and reiterated that the father, like the mother, does not "seem[] to have any understanding of the emotional needs of [Eden] and the serious medical needs of [Sam] and [Mark].  In the nearly four years during which this family has been involved with the [department], Father has shown no insight, made little or no progress and has made no attempt at cooperation."  He concluded that "Father has grievous shortcomings that ha[ve] put the Subject Children at risk."

In light of the judge's clarification, we see no error in the decrees terminating the parental rights of the father.  None of the facts found were clearly in error, and, taken together, they support by clear and convincing evidence his determinations both of unfitness and that termination is in the best interests of the children.

<u>Decrees affirmed</u>.
