NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-50                                              Appeals Court

ADOPTION OF TALIK.[1]

No. 17-P-50.

Suffolk.      July 28, 2017. - October 4, 2017.

Present:  Green, Ditkoff, & Wendlandt, JJ.


Adoption, Care and protection, Dispensing with parent's consent.
    Parent and Child, Dispensing with parent's consent to
    adoption.  Minor, Care and protection.  Practice, Civil,
    Care and protection proceeding.  Evidence, Inference.



    Petition filed in the Suffolk County Division of the
Juvenile Court Department on March 6, 2013.

    The case was heard by Peter M. Coyne, J.


    Dennis M. Toomey for the mother.
    Bryan F. Bertram, Assistant Attorney General, for
Department of Children and Families.
    Deborah J. Bero for the child.


    WENDLANDT, J.  The mother appeals from a decree issued by a

judge of the Juvenile Court finding her unfit to parent her son,

Talik, terminating her parental rights, placing the child in the

_____

    [1] A pseudonym.

care of the Department of Children and Families (DCF), and approving DCF's plan for adoption of the child by his foster parents.[2]  The mother argues that (1) the judge impermissibly drew an adverse inference from her failure to attend the trial; (2) the evidence of her unfitness was stale and thus could not support a finding of her unfitness by clear and convincing evidence; and (3) the pretrial placement of the child with the foster parents instead of with the child's maternal grandmother's first cousin (relative) in California was an abuse of discretion.  We conclude that the judge did not err in drawing a negative inference from the mother's absence and finding that the mother was unfit, and that there was no abuse of discretion in the child's pretrial placement.  Accordingly, we affirm.

1.  Background.  We draw on the detailed findings of fact made by the judge, which find ample support in the record.  The child was born in March, 2013, and his meconium tested positive for marijuana.  The mother tested positive for OxyContin, cocaine, and opiates.  The child was admitted to the neonatal intensive care unit due to high blood sugar levels (attributed to the mother's mismanagement of her diabetes during the pregnancy), a possible heart murmur, and concerns regarding his

_____

[2] The judge also terminated the father's rights.  The father appealed, but the judge allowed a motion to dismiss his appeal, an order from which the father did not appeal.

liver.  During the pregnancy, the mother tested positive for marijuana at her first prenatal appointment, which occurred just over two months before the child was born.  She refused toxicology screens for the remainder of her pregnancy.  Between December, 2012, and the child's birth, the mother exhibited drug seeking behavior, visiting the hospital several times to seek pain medication ostensibly because she was unable to regulate her insulin levels; on one occasion, she smelled of alcohol.

Three days after the child's birth, DCF filed a care and protection petition seeking custody of the child.  Both parents waived their rights to a temporary custody hearing, and the petition was allowed.  Twelve days after his birth, the child was discharged to the care of his foster parents, where he has remained ever since.

After DCF took temporary custody of the child in March, 2013, DCF drafted a service plan for the mother with the goal of reunification.  The plan tasked the mother with (1) attending parenting classes; (2) participating in substance abuse treatment; (3) providing toxicology screens; (4) engaging in mental health treatment and taking any prescribed medications; (5) maintaining contact with DCF; (6) making her whereabouts known to DCF; and (7) attending visits with the child.  The mother attended an outpatient addiction and treatment management program in March, 2013, but was discharged from the program in

May, 2013, due to her lack of attendance.  She submitted two urine screens in April, 2013, both of which came back negative.  Other than these efforts, the mother did not complete the service plan tasks.  In addition, the mother has a long history of domestic violence with the father in front of their other children,[3] and additional incidents of domestic violence were reported after DCF obtained temporary custody of the child.

In September, 2013, DCF changed the child's placement goal to adoption.  The mother continued her noncompliance with DCF's service plan and has not visited the child or had any contact with DCF since March, 2014.

Shortly after the birth of the child, the relative, who resided in California, expressed interest in having the child placed with her.  California Child Protective Services completed a placement study in October, 2013.  The relative's home did not meet Massachusetts standards; specifically, the home had insufficient physical space available for the child in view of the number of people already living there.  DCF did not place the child with the relative; instead, the child remained in the custody of his foster parents.  In March, 2014, the mother filed a motion seeking a determination whether DCF's "refusal to place the . . . child with [the relative] is an abuse of [DCF's] discretion . . . and if [DCF] has so abused its discretion, to

---

[3] The other children are not involved in these proceedings.

order [DCF] to place the child with the [relative]." The motion was denied.[4]

The trial took place over four days between December, 2014, and January, 2015. The mother had notice of the trial, and her attorney was present throughout. However, the mother herself was not present, and her counsel was not aware of her location. The judge heard testimony from social workers, expert witnesses, the father, the relative, and one of the foster parents. Closing arguments were presented on January 23, 2015, and again the mother was not present. On January 30, 2015, with the mother present, the judge issued his decision from the bench, terminating the mother's parental rights and approving DCF's plan for adoption of the child by his foster parents. The judge drew a negative inference from the mother's failure to attend and testify at trial. In January, 2016, the judge issued his findings of fact, conclusions of law, and order supporting his earlier decision terminating the mother's rights.

2. Discussion. "In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the legal relation between parent and

---

[4] The mother also supported the relative as the adoptive parent of the child in the event that her rights were terminated.

child." Adoption of Ilian, 91 Mass. App. Ct. 727, 729 (2017), quoting from Adoption of Ilona, 459 Mass. 53, 59 (2011). A finding of unfitness must be supported "by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993).

We give substantial deference to the judge's decision to terminate parental rights "and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. at 59. "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Custody of Eleanor, 414 Mass. 795, 799 (1993), quoting from Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977).

a. Adverse inference. On appeal, the mother argues that the judge erred by drawing an adverse inference against her based on her absence from trial in violation of her right to due

process, which she contends includes the same protection against an adverse inference that is afforded to a defendant who is absent from a criminal proceeding.  We disagree.

"Custody proceedings are not criminal in nature and, accordingly, the full panoply of constitutional rights afforded criminal defendants does not apply in these cases."  Custody of Two Minors, 396 Mass. 610, 616 (1986).  Instead, these are civil cases; the State acts to protect children, not to punish misbehaving parents.[5]  Ibid.  Nonetheless, removal of a child from a parent is a significant deprivation and implicates fundamental and constitutionally protected interests. Accordingly, after a parent has received notice of proceedings affecting her rights in her child, we require further that the parent be represented by counsel and that the Commonwealth prove the parent unfit by clear and convincing evidence.  Id. at 618.

---

[5] Because of the civil nature of these proceedings, certain constitutional rights attaching in criminal proceedings simply do not apply.  Custody of Two Minors, 396 Mass. at 616-617.  See e.g., Custody of a Minor, 375 Mass. 733, 746 (1978) (double jeopardy inapplicable); Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption, 383 Mass. 573, 592-593 (1981) (findings not required to be "beyond a reasonable doubt" standard of proof); Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption, 384 Mass. 707, 710-711 (1981) (exclusionary rule inapplicable); Adoption of Don, 435 Mass. 158, 169 (2001) (right to face-to-face confrontation not required); Adoption of John, 53 Mass. App. Ct. 431, 435 (2001) (colloquy similar to that required for plea agreements in criminal cases is not required when parent enters into agreement for judgment).

These requirements "provide a sufficient measure of extra protection" in view of the parent's interests at stake.  Ibid.

Significantly, the Supreme Judicial Court has held that an adverse inference may be drawn in a child custody case from a parent's failure to testify even though such an inference would be impermissible in a criminal trial.  See id. at 617 (permitting adverse inference in care and protection hearing where parent declines to testify based on his privilege against self-incrimination); Adoption of Nadia, 42 Mass. App. Ct. 304, 307-308 (1997) (holding that adverse inference is permissible in case involving termination of parental rights); Care & Protection of Quinn, 54 Mass. App. Ct. 117, 120-121 (2002) (permitting negative inference against father for failure to testify as to his fitness even though father faced parallel criminal proceeding).  It follows that an adverse inference may be drawn against a parent who, despite having received notice, is absent from a child custody or termination proceeding, even though such an inference would be impermissible in a criminal matter absent affirmative evidence showing consciousness of guilt.[6]  Where a parent has notice of a proceeding to determine

_____

[6] See Commonwealth v. Hightower, 400 Mass. 267, 269 (1987) (defendant's absence alone could not be used as evidence of consciousness of guilt without any additional evidence that defendant's nonappearance was motivated by choice to avoid trial); Commonwealth v. Kane, 19 Mass. App. Ct. 129, 137 (1984) (absence alone is not sufficient to warrant negative inference

his parental rights and the parent does not attend or provide an explanation for not attending, the absence may suggest that the parent has abandoned his rights in the child or cannot meet the child's best interests.

Importantly, the adverse inference drawn from a party's absence is not sufficient, by itself, to meet an opponent's burden of proof. "No inference can be drawn . . . unless a case adverse to the interests of the party affected is presented so that failure of a party to testify would be a fair subject of comment." Custody of Two Minors, 396 Mass. at 616. See Singh v. Capuano, 468 Mass. 328, 333-334 (2014) (defendant's failure to testify cannot be used to justify issuance of abuse prevention order until case is presented on other evidence). This "provides extra protection to parents." Adoption of Nadia, 42 Mass. App. Ct. at 308.

Further, a trial judge has discretion to determine whether to draw an adverse inference from a parent's absence. See Singh, 468 Mass. at 333 ("It is well settled that a fact finder may, but is not required to, draw an inference adverse to the nontestifying defendant . . ."). In determining whether to exercise that discretion, "the judge as fact finder" is to

without facts in record supporting adverse inference); Commonwealth v. Muckle, 59 Mass. App. Ct. 631, 637-640 (2003) (defendant's midtrial absence alone did not support consciousness of guilt jury instruction).

consider whether such an inference is "fair and reasonable based on all the circumstances and evidence before" her. Id. at 334. On appeal, we review such decisions for abuse of discretion. See id. at 333-334.

In the present case, we discern no such abuse. The judge inquired into the reasons for the mother's absence. The mother had not been involved with the child for at least nine months prior to the trial. The last time that the mother contacted DCF was in March, 2014. At a pretrial hearing, the judge asked the mother's counsel if he had had recent communication with his client and counsel responded, "I have not spoken to my client in some time." Again, at the start of the trial the judge asked the mother's counsel if he had submitted a witness list. Counsel responded, "I haven't had any contact with my client since I was directed to request placement of the child in California." The mother did not attend any of the trial days, attending only on the day the judge announced his decision from the bench. Even then, she offered no explanation for her absence and made no motion to reopen the evidence; instead, she was silent. The mother makes no claim that her absence was occasioned by causes beyond her control. Under the circumstances, it was not an abuse of discretion for the judge to draw an inference adverse to the mother. In any event, as set forth below, the adverse inference drawn by the judge from

the mother's absence at trial was but one of the many factors he considered.  See Adoption of Cecily, 83 Mass. App. Ct. 719, 727 (2013).

b.  Unfitness.  The mother argues that the judge's findings are insufficient to establish the mother's unfitness by clear and convincing evidence because, although she does not dispute any of the factual findings, she asserts that the evidence is stale.  We disagree.

To begin, the evidence showed that the mother had ceased visiting the child at least as of nine months prior to the trial.  Since March, 2014, she had had no contact with DCF and failed to comply with the tasks on her service plan.  The mother was unavailable for the court investigator to observe her parenting the child.  The record shows that she had not been in contact with her counsel and did not attend any of the days of the trial except the last day.  This evidence was not stale; to the contrary, the mother's current absence from the child's life, lack of communication with DCF, and failure to attend the proceedings generally were relevant factors in determining whether to terminate her parental rights.  See Adoption of Astrid, 45 Mass. App. Ct. 538, 544 (1998); Adoption of Fran, 54 Mass. App. Ct. 455, 462-463 (2002).

In addition, the mother has a history of substance abuse, which gave rise to the initial petition for care and protection.

The mother asserts that the last available evidence regarding her substance abuse is two clean toxicology screens in April, 2013. However, since April, 2013, she has neither participated in any substance abuse treatment nor submitted to any further screens in contravention of her service plan tasks. Given her failure to continue treatment and her noncompliance with the other service plan tasks, it was not error for the judge to consider her substance abuse in assessing her fitness. See Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987) ("Evidence such as the failure of the parents to keep a stable home environment for the children, the refusal of the parents to maintain service plans, visitation schedules, and counseling programs designed to strengthen the family unit are relevant to the determination of unfitness"); Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) (parent's lack of cooperation with DCF was "relevant to the determination of unfitness").

Moreover, the mother has a long history of domestic violence with the father, including physical altercations in front of their other children. This behavior continued in the months after the child's birth, when the police responded to numerous domestic disputes. It is well established that exposure to domestic violence works a "distinctly grievous kind of harm" on children, Custody of Vaughn, 422 Mass. 590, 595

(1996), and instances of such familial violence are compelling evidence for a finding of parental unfitness. See id. at 595-596; Adoption of Gillian, 63 Mass. App. Ct. 398, 404-405 & n.6 (2005). There was no evidence that the mother had participated in any services to address this long history of domestic violence. Accordingly, the judge appropriately considered this history of domestic violence in making his determination as to the mother's fitness.

The judge's findings are specific, detailed, and demonstrate that he gave close attention to the evidence. See Adoption of Anton, 72 Mass. App. Ct. 667, 673 (2008). The judge properly considered the requisite factors under G. L. c. 210, § 3(c), in his determination of unfitness, finding factors (i), (ii), (iii), (v), (vi), (vii), (viii), (ix), (x), and (xii) to be applicable. In sum, the mother's lack of involvement with the child for an extended period of time, substance abuse, ongoing instability, and history of domestic violence show that there is no "reasonable likelihood that the [mother]'s unfitness at the time of trial may be only temporary." Adoption of Carlos, 413 Mass. 339, 350 (1992). Accordingly, the findings support the judge's determination of unfitness by clear and convincing evidence and that termination is in the best

interests of the child.  See Adoption of Eden, 88 Mass. App. Ct. 293, 297-298 (2015).[7]

c.  Pretrial placement.  The mother next argues that the pretrial placement of the child with his foster parents and not the relative in California was unreasonable and an abuse of discretion.  The mother does not address directly why the propriety of the pretrial placement is not moot, but she does argue that this ruling caused her prejudice at trial.[8]  Passing over the question of mootness, we turn to the merits.

"Placement decisions, as opposed to custody decisions, fall within the discretionary powers of the legal custodian as one of the usual incidents of custody."  Care & Protection of Manuel, 428 Mass. 527, 534 (1998).  See G. L. c. 119, § 23.  DCF regulations require that the child's placement be made "based upon safety, well-being and permanency of the child and the child's individual needs."  110 Code of Mass. Regs. § 7.101(1) (2009).  "While the judge certainly may 'offer guidance to the [custodian] concerning a child's residence,' the ultimate decision regarding placement is the custodian's."  Care & Protection of Manuel, 428 Mass. at 534, quoting from Care &

_____

[7] Nor is there any abuse of discretion in the judge's order denying posttermination or postadoption visitation to the mother, who had been absent from the child's life entirely for the nine months prior to trial.

[8] See note 9, infra.

Protection of Isaac, 419 Mass. 602, 609 (1995).  "That decision is reviewable under [G. L. c. 119,] § 21[,] for abuse of discretion or error of law only."  Care & Protection of Manuel, 428 Mass. at 534.  A decision is an abuse of discretion if it amounts to a "clear error of judgment" that falls "outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted).

Here, it was not an abuse of discretion to conclude that the best interests of the child was to have him stay in the custody of his preadoptive parents while awaiting trial. Notably, the mother did not file her abuse of discretion motion until one year after the child was placed with his foster parents even though the California home study of the relative had been completed five months earlier in October, 2013. Meanwhile, the child was in a stable home where he was able to attain the immediate care his early medical conditions required. The child also had the opportunity to bond with his two attentive and loving foster parents.  In contrast, the proposed California placement did not meet Massachusetts standards for placement.  The relative, who was already responsible for the care of her disabled adult daughter and two toddlers, did not appear to understand that the goal for the child was adoption, and stated that she was overwhelmed.  She has not met the child and has no connection with the child's older brother, who is

placed in California with the maternal grandmother. Under these circumstances, the judge did not abuse his discretion by concluding that the best interests of the child favored continued placement with his foster parents, where he had lived since he was twelve days old and where he was thriving.[9]

Decree affirmed.

---

[9] We additionally reject the mother's contention that the pretrial placement violated her right to have evidence available to her regarding the bond that she believes would have formed between the child and the relative. Due process is satisfied by providing notice and an opportunity to be heard. Care & Protection of Orazio, 68 Mass. App. Ct. 213, 220 (2007). Additional safeguards are provided in child welfare cases by requiring that parents be represented by counsel, and that DCF meet the clear and convincing evidence standard. There is no due process right to an opportunity to create evidence through a particular pretrial placement.