The mother appeals from a decree of the Juvenile Court finding her unfit to assume parental responsibility of her son, Sanjay, and terminating her parental rights to him.[3] The mother contends that the decree should be vacated because numerous findings by the judge were clearly erroneous, and the supported findings do not show by clear and convincing evidence that she is currently unfit to parent Sanjay or that termination of her parental rights is in his best interests. We affirm.
Background. Sanjay was born prematurely, in October of 2012, with a congenital heart defect known as hypoplastic left heart syndrome (HLHS). The left side of Sanjay's heart does not function, he has an enlarged liver due to his condition, and he has also been diagnosed with failure to thrive, mild hypospadius, and global developmental delays. As a result of his HLHS, Sanjay underwent numerous surgical procedures, and his medical needs demanded, and continue to warrant, constant attention. Sanjay's medical needs are detailed in the judge's comprehensive findings of fact, which are supported by the trial record.
On November 7, 2012, the Department of Children and Families (DCF) received a G. L. c. 119, § 51A, report (51A report) from an employee at Children's Hospital alleging neglect of Sanjay by the mother. In the course of its investigation, DCF learned that the mother is illiterate, and that she rented a small bedroom in an apartment.[4] At the mother's request, DCF spoke with her pastor, who "relayed that [the mother] agreed with [DCF's] decision to place [Sanjay] in foster care due to the child's illness and that foster care was the best thing for him." During the course of DCF's investigation, the mother admitted that she could not care for Sanjay. DCF ultimately supported the allegations of neglect as to Sanjay.[5]
In or around late November, 2012, DCF filed the instant care and protection petition, and obtained temporary custody of Sanjay.[6] In January, 2013, following continuing medical problems and readmissions to the hospital, Sanjay was released to a medical foster home where he received extensive medical services. During this time, DCF attempted to work with the mother to improve her parenting abilities. These efforts, reflected in the judge's findings, and supported by the record, proved unsuccessful.
On November 13, 2013, the mother stipulated that Sanjay was in need of care and protection and that she was currently unable to further the welfare and best interests of the child.[7] Sanjay was placed in the continued temporary custody of DCF that same day. On January 8, 2014, he was placed in the permanent custody of DCF.
The judge found that DCF "worked diligently to remove the barriers to reunification," including providing "linguistic assistance to [the mother] in the form of a Spanish speaking G. L. c. 119, § 51B investigator, social worker, parent aide, instructional nurse, and [DCF's] regional nurse. Translators were available for [the mother] for every medical appointment, many of which she failed to attend."[8] In addition to failing to attend medical appointments, the mother did not communicate with Sanjay's doctors or providers.
From March to April of 2016, DCF also provided a Spanish-speaking nurse to teach the mother to administer Sanjay's medication. The nurse met with the mother twice weekly. The mother "was not able to absorb the full content of this educational time and [the nurse] did not believe that additional time would be productive."[9]
By the end of the trial in this case, May 8, 2017, Sanjay was four years old, and he had not been in the mother's care for most of his life. Sanjay was placed with his preadoptive family before his third birthday, and has a bond with them as "[h]e looks to them for affection and they, in turn, are affectionate and supportive of him."
Discussion. We review the mother's claim to determine whether the judge abused her discretion or committed a clear error of law. Adoption of Imelda, 72 Mass. App. Ct. 354, 360 (2008). "A decision to terminate parental rights involves a two-step analysis. First, a determination that the parent is currently unfit, and, second, a determination that termination is in the best interests of the child" (citations omitted). Id. The judge must consider whether the parent's deficits "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998). "Once a parent is found to be unfit, the judge must then ascertain whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child" (quotation omitted). Adoption of Imelda, supra. "[T]he judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference" (quotation omitted). Adoption of Warren, 44 Mass. App. Ct. 620, 625 (1998).
In addition, "[f]itness is not merely the absence of abuse or neglect; nor is it a set of abilities or characteristics that are the same in all circumstances." Guardianship of Estelle, 70 Mass. App. Ct. 575, 579 (2007). Rather, a determination of "how to balance a parent's capacity to care adequately for a child (i.e., his or her 'fitness') with that child's 'best interests,' given the child's current circumstances," requires an assessment of the parent's "ability to care for the child, as well as the effect on a child of being placed in the custody of that parent." Id. at 580, 581. "One who is fit to parent in some circumstances may not be fit if the circumstances are otherwise. A parent may be fit to raise one child but not another." Id. at 581.
"A finding is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotation omitted). Custody of Eleanor, 414 Mass. 795, 799 (1993). "Subsidiary findings must be supported by a preponderance of the evidence and none of the findings will be disturbed unless clearly erroneous" (citation omitted). Adoption of Nancy, 443 Mass. 512, 515 (2005).
In the present case, the mother mainly contends that the judge's finding of unfitness and termination of parental rights as to the mother were not supported by clear and convincing evidence. She further contends that various subsidiary findings of fact are clearly erroneous.
We discern no abuse of discretion or clear error of law in the judge's detailed findings.[10] The judge fully and properly considered the required factors set forth in G. L. c. 210, § 3 (c ), and found factors (iv), (vi), and (vii) applicable to her determination that the mother was unfit. The detailed record evidence of the mother's unfitness amply supports the judge's findings and determination that the mother is unfit and that termination of her parental rights was in the child's best interests. The mother's understanding of Sanjay's substantial medical needs did not improve over the course of several years. Despite multiple efforts to provide the mother with the tools to learn to care for Sanjay, she demonstrated a continued inability to do so, as exemplified by, inter alia, her failure to attend Sanjay's medical appointments, failure to follow up with medical personnel, and inability to administer or understand the side effects of his medication.
Upon review of the entire record on appeal, "we see no error in the decree[ ] terminating the parental rights of the [mother]. None of the [significant] facts found were clearly in error, and, taken together, they support by clear and convincing evidence [the judge's] determinations both of unfitness and that termination is in the best interests of the child[ ]." Adoption of Eden, 88 Mass. App. Ct. 293, 297-298 (2015). The judge's findings are specific, detailed, and demonstrate that close attention was given to the evidence. See Adoption of Anton, 72 Mass. App. Ct. 667, 673 (2008).[11]
Decree affirmed.

Sanjay's father did not participate in the Juvenile Court proceedings and is not a party to this appeal.

It was reported that the apartment in which the mother rented the room "was infested with mice and cockroaches which raised concerns about [Sanjay] contracting an infection in the apartment." There was evidence of another report, however, indicating that the apartment was clean.

On December 6, 2012, while Sanjay was still in the hospital, DCF received another 51A report alleging the neglect by the mother of another son, Adam (a pseudonym). A DCF social worker observed a second degree burn on Adam's stomach. When asked why she did not call 911 for assistance, the mother "revealed that she did not know how to make the call." The 51A report as to Adam "was eventually screened out a number of days later."

At the outset of this care and protection case, a court investigator had difficulty meeting with the mother despite multiple attempts to interview her. The mother "had a cell phone but was unable to use the phone unless the number was saved to the phone. Appointments were scheduled and cancelled by [the mother]. The Court Investigator offered to interview [her] on a Saturday or Sunday, but [she] said that she was unavailable on those days. At one point, [she] asked the Court Investigator to interview her at 4:00 a.m. " The mother told the court investigator that she was unable to provide the necessary care to manage Sanjay's health, and was willing to have him placed in foster care.

Despite the mother's recognition that she was unable to provide necessary care for Sanjay, it is undisputed that she loves him.

The mother's native language is Quechua. She does not speak or understand English, but can communicate in simple Spanish, spoken slowly. Throughout the DCF investigation and the underlying case, myriad services involving Spanish-speaking interpreters, nurses, and parent aides were offered and provided to her to facilitate reunification.

"A community-based 'English as a Second Language' program was available to [the mother]." DCF "made a referral for [her] and offered to fund the program for her [but she] failed to attend." The judge noted that the "program may have had a minimum education requirement that [she] could not satisfy."

The mother challenges numerous subsidiary findings of fact. Contrary to her argument, the record supports the judge's findings and thus they are not clearly erroneous. We recognize that two of the findings -- that the mother's family "disavowed her" and that the mother "reports to [DCF] that she is scared and unable to care for [Sanjay]" -- are temporally ambiguous, particularly when viewed out of context and in isolation. However, examined in the context of the record as a whole, which is mostly organized chronologically, the record supports both findings. Even assuming, arguendo, that these two findings are clearly erroneous, the record supports the judge's critical findings and "the judge's over-all conclusion of parental unfitness is fully supported by the record." Adoption of Helen, 429 Mass. 856, 859-860 (1999) ("Although some of the judge's subsidiary findings were erroneous, the judge amply supported [her] conclusion that the mother is currently unfit to care for her child").

Despite the moral overtones of the statutory term "unfit," the judge's decision is not a moral judgment, nor is it a determination that the mother does not love the child. See note 6, supra. The question for the judge is "whether the parent's deficiencies 'place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child.' " Adoption of Olivette, 79 Mass. App. Ct. 141, 157 (2011), quoting Care & Protection of Bruce, 44 Mass. App. Ct. at 761.